**STAR FRUIT COMPANY, a Florida corporation, v. EAGLE LAKE GROWERS, INC., a Florida corporation.**

33 So. (2nd) 858

February 10, 1948

January Term, 1948

En Banc

*Paul Ritter, Gunter Stephenson, John Wigginton* and *T. T. Turnbull,* for appellant.

*Bentley & Shafer,* for appellee.

BARNS, J.:

Appellee sued appellant for the alleged conversion of 721 boxes of tangerines. The lower court entered a judgment against appellant in the amount of $2,163.75, and this appeal is from that judgment.

On Wednesday, December 19, 1944, appellee delivered 721 field boxes of tangerines to appellant's packing house under an agreement whereby appellant was to grade, pack, ship and sell for account of appellee. On Sunday following, appellee, knowing that there was an embargo on all citrus shipments and having learned that appellant had not packed or shipped the fruit, sent its trucks to pick up the fruit and, upon ar--

rival at the packing house, its driver was informed by two men that the tangerines had been carried off and dumped.

There is evidence to support the conclusion that the appellee-owner was not notified by appellant that it could not handle the fruit or that it would be dumped. Appellant's excuse for not packing the tangerines was that they were not fit to ship; that they were badly plugged from being pulled from the trees instead of being clipped. On December 17th and 18th, preceding delivery of the 721 boxes on the 19th, the appellant sold 686 boxes of tangerines from the same crop of which the 721 boxes were a part for a net sum of $2,606.65.

Appellant claims that it did not recover anything from the tangerines; that by turning them over to a dairyman it merely saved the cost of hauling them. The fruit was delivered to the dairyman, who hauled it away for use as cow feed. This was the manner in which the appellant disposed of its culls.

It was the duty of the appellant, having received the fruit for packing and sale for the account of the plaintiff-appellee, when it found that it could not do so, to notify the plaintiff-appellee, in order that it might use its own judgment as to how it might best dispose of its property.

"Essential elements of a conversion is a wrongful deprivation of property to the owner."—Wilson Cypress Co. et al. v. Logan, 120 Fla. 124, 162 So. 489.

"The gist of a conversion has been declared to be not the acquisition of the property of the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled. A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion."—53 Am. Jur., p. 822.

The wrongful destruction or disposal of personal property by a bailee, contrary to the terms, terminates the trust and works a disseisin of the true owner, and action for conversion will lie.

In a general sense the law of conversion is as follows:

"Let us now note a few judicial utterances which serve to make clear the exact nature of that disseisin of chattels which is called conversion. 'What,' says Lord Holt, 'is a conversion, but an assuming upon one's self the property and right of disposing of another's goods?' The technical meaning of conversion, says Martin, B., in Burroughs v. Bayne (1860), is the 'detaining goods so as to deprive the person entitled to the possession of them of his dominion over them.' Such expressions as 'interference with the dominion of the true owner,' 'exercise of dominion to the exclusion and in defiance of the plaintiff's right,' and "unauthorized assumption of the powers of a true owner,' are familiar forms in which the gist of this wrong is described. Not a bad definition of conversion is that approved by Bramwell, B., in Hiort v. Bott (1874), viz., 'an unauthorized act which deprives another of his property permanently or for an indefinite time.' If we should say 'deprives another of the dominion of his property permanently or for an indefinite time,' this definition would perhaps be all that could be desired. However, the language be framed it is obvious that the gist of conversion is found in the disseisin of the owner or in an interference with legal rights which are incident to ownership, such as the right to have possession."—Street's "Foundations of Legal Liability," Vol. I, p. 233, 234.

"The expression, "with intent to deprive the true owner,' or 'with intent to convert,' is sometimes incorporated into definitions of conversion, as if the elements of intention were a universal qualification of the wrong. But really it is only material when the act complained of does not speak for itself."—Ib., p. 236.

"There must be some positive overt act of adverse dominion."—Ib., p. 236.

"If I drink up your wine, or consume your substance without authority, I thereby, of necessity, disseise you, and am guilty of a conversion. If the chattels are not immediately consumable, an appropriation to one's own use and purpose is quite as effective a disseisin as is a direct consumption."—Ib., p. 238.

"A total destruction of personal property, like the impairment of its value, if accompanied by a disseisin of the owner's interests, amounts to a conversion, otherwise not."—Ib., p. 240.

The appellant's first question presented is as follows:

"Is it harmful error for the trial court to instruct the jury that where the evidence on an issue is evenly balanced their finding should be for the party upon whom the burden of proof rests?"

It is submitted that this question is covered by Assignment of Error No. 1. It is proper that counsel for appellant copy into its brief the assignment of error creating the question. An assignment of error is the plaintiff's declaration against the trial judge, charging harmful error.

"Questions" are in the nature of argument, and somewhat secondary. "Questions" grow out of and are only created by the assignment of error, and the said Rule 20 prescribes that:

"Specific assignment of error from which the questions arise should be stated, and, if any reference to the transcript is made, the page should be given."

It is important that appellant present in his brief the acts which form the basis and support the allegations of fact as charged in the assignment of error.

The appellant here has supported the assignment of error by copying into its brief the subject matter thereof, to-wit: the charge of the court to the jury, as follows:

"If the evidence for the issue and against the issue are evenly balanced, then you should find *for* the person upon whom the burden is placed to prove his case by a preponderance of the evidence and the person whose duty it is to prove the case has proved his case whenever he has produced sufficient evidence to preponerate—when he has produced a preponderance of the evidence."

The appellee suggests that this portion of the transcript of the trial proceedings, as certified to by the court reporter, was in error; however, there is no suggestion in the record that any attempt has been made in the court below to have

the record speak the truth, of same be erroneous. There is no order of the circuit judge correcting same as erroneous. Under such circumstances, the record will stand as correct and we find that the charge was harmful error. Notwithstanding that, there were numerous other charges to the contrary and in conflict therewith.

Another question presented by appellant is as follows:

"May a jury assess damages against a party for the conversion of goods where there is no evidence of the value of the goods at the time of the alleged conversion?"

And it is suggested that this question is raised by Assignment of Error No. 5, which we find to be as follows:

"The court erred in denying defendant's motion for new trial, and thereby holding, among other things, that there was any evidence from which the jury could have found the tangerines involved to be of any value."

It is apparent from the evidence that the jury has used the value of the tangerines shipped earlier in the week as a basis for the value of the tangerines involved in this suit; and it is very doubtful that tangerines, badly plugged, and in a packing house at a time when the packing house is overloaded, and during a car shortage, would be of equal value to fruit which was handled at a time when these conditions did not exist.

There was no evidence introduced concerning value, except the returns on prior shipments and sales.

By reason of the premises, it is our conclusion that the judgment appealed should be, and is hereby reversed for a new trial.

BUFORD, CHAPMAN and SEBRING, JJ., concur.

THOMAS, C. J., and ADAMS, J., concur specially.

TERRELL, J., dissents.

THOMAS, C. J., and ADAMS, J., concurring specially:

We concur in the judgment of reversal but are of the opinion that the evidence does not make a case of conversion.