**METROPOLITAN VACUUM CLEANER CO., Inc., Plaintiff,**

v.

**DOUGLAS-GUARDIAN WAREHOUSE CORPORATION, Defendant.**

United States District Court
S. D. New York.
April 16, 1962.

Schulz & Fay, New York City, Gabriel V. Fay, New York City, of counsel, for plaintiff.

**196**

Mendes & Mount, New York City, George W. Clark, New York City, of counsel, for defendant.

PALMIERI, District Judge.

### Preliminary Statement

The plaintiff, a New York corporation, is a distributor of vacuum cleaners and sewing machines. The defendant operated a bonded warehouse at Clearwater, Florida, at the place of business of one Howard K. Ewing (Howard the Trader), who sold merchandise by means of auction sales which were regularly held and extensively advertised. Plaintiff stored its merchandise in defendant's warehouse. By contract arrangement between plaintiff and defendant, plaintiff's merchandise could be released only upon payment by check, and only up to a total amount of $500. The plaintiff was entitled to prompt remittance of the check, and to prompt notice of the release of his merchandise. The defendant had only one employee at the warehouse, a bonded representative named Timbs. His salary was paid by defendant, but defendant was reimbursed therefor by Ewing. In April and May 1957, Ewing experienced serious financial difficulties of which Timbs was largely aware. It was during this period that Timbs paid scant attention to the warehousing contract with plaintiff. Timbs permitted plaintiff's goods to be withdrawn under circumstances which deprived plaintiff of prompt remittance of payment and of prompt notice of the release of his merchandise to Howard the Trader and, in effect, amounted to extensions of unauthorized credit to him. The net result was that plaintiff was left with dishonored and unpaid checks of Ewing, totalling $8,767.50 on which he recovered $2,559.50 as the result of a creditors' proceeding, leaving a difference of $6,208.00 which is the subject of the present litigation.

The issue of defendant's alleged negligence in failing to advise plaintiff of Ewing's financial posture in April and May, 1957, and in accepting checks when he had reason to believe their value was suspect, was much bruited at the trial and in the briefs. My view is that the defendant had no duty to evaluate Ewing's credit or make financial reports to plaintiff. Defendant did, however, have the duty to comply with its contract of bailment, and its failure to do so renders it liable to answer for conversion and it is on this basis that I have rendered judgment in plaintiff's favor.

### FINDINGS OF FACT

1. Metropolitan Vacuum Cleaner Co., Inc. (Metropolitan), the plaintiff herein, is incorporated under the laws of the State of New York.

2. Douglas-Guardian Warehouse Corporation (Douglas-Guardian), the defendant herein, is a Louisiana corporation doing business in Florida.

3. The defendant has filed a Certificate with the State of New York, authorizing it to do business within the State of New York.

4. At all times mentioned in the complaint herein, Douglas-Guardian carried on the business of a "warehouseman" at various places in the United States, including the City of Clearwater, Florida, and was engaged in the business of storing goods for hire.

5. Plaintiff and defendant entered into a contract whereby plaintiff agreed to store merchandise in defendant's warehouse and defendant was to deliver the merchandise to plaintiff's customer Howard K. Ewing (Howard the Trader) on certain terms and conditions.

6. The contract between the parties consists of the following: (a) Letter dated April 1, 1957 from plaintiff to defendant (Plaintiff's Exhibit No. 2); (b) Letter dated April 16, 1957 from defendant to plaintiff with enclosure (Plaintiff's Exhibit No. 3); (c) Articles of agreement incorporated by reference in defendant's letter of April 16, 1957 (Plaintiff's Exhibit No. 4).

The April 1st letter states that "Howard, The Trader may pick up to $500.00 of our merchandise as needed, provided

he presents his check for same." This was confirmed by the April 16th letter (Plaintiff's Exhibit No. 3) of the defendant:

"You are hereby authorized to deliver to Howard's, upon its request, any of such merchandise having a total warehouse receipt value not exceeding $500.00 under the following provisions:

"When a Release is desired by Howard's, you will prepare in quadruplicate our regular form of Order for Warehouse Release specifying thereon the type and quantity of merchandise to be released with the value thereof.

"An authorized individual of Howard's will sign all copies of the Release, in the space provided, and return all copies to you together with Howard's regular Company check, mayde payable to *METROPOLITAN WHOLESALERS, INC.*, covering the total release value of the merchandise they desire to be delivered to them. The release valuation is to be based on the prices stated on the warehouse receipts at the time the merchandise was stored.

"When you are sure that the Release and the check are in order, you may deliver the merchandise covered by that Release to Howard's."

The employment contract between the defendant and its bonded representative in Clearwater, which defendant incorporated into this contract by reference in its letter of April 16, 1957, contains the following instruction to its representative, "(12) You are to exercise the same care in the preservation of the goods in storage as a reasonably careful owner of the same goods would exercise."

7. In the early part of May, 1957, plaintiff's customer, Ewing, was in financial difficulties and this fact was generally well known in the Clearwater section of Florida. On May 31st a committee of his employees took over the operation of the business and ran it until June 8th, when the creditors' committee took over.

8. After Ewing's insolvency became general knowledge, the defendant continued to release plaintiff's merchandise. Eighteen (18) checks of plaintiff's customer, Ewing, which were accepted by the defendant in payment for merchandise and forwarded to plaintiff, were returned for insufficient funds. These checks were dated from May 13, 1957 to June 5, 1957, and totalled $8,767.50.

9. Timbs, defendant's bonded representative in Clearwater, who alone operated defendant's warehouse, admitted releasing plaintiff's merchandise, as a general course of conduct, without first obtaining a signed release therefor and/or a check. He did not understand that he was required to receive a check each time he released merchandise regardless of the amount. He testified that the account was "open" until he had released $500.00 in merchandise. It was only then that he demanded a check.

10. Timbs did not promptly forward the checks and releases to the plaintiff. Plaintiff submitted a chart in evidence showing the dates the checks were dated, received, deposited and returned by the bank. (Plaintiff's Exhibit No. 26). The defendant submitted a similar chart indicating the dates that its Tampa office received a copy of the release from Timbs and the dates a copy was returned to it by the plaintiff from New York. The plaintiff's chart indicates that the plaintiff received the checks between four (4) and eleven (11) days after they were issued. The defendant's chart indicates that its Tampa office received the releases between one (1) and nine (9) days before the plaintiff received the checks and releases. These charts do not contradict each other, but, on the contrary, tend to substantiate each other. (Plaintiff's Exhibit No. 26; Defendant's Exhibit No. A).

Plaintiff also submitted in evidence deposit slips showing when the first fourteen (14) checks (Plaintiff's Exhibits Nos. 5–18 inclusive) were deposited and the bank notices indicating when these checks were returned by the bank. (Plaintiff's Exhibits Nos. 23 and 24)

**198**

The last four (4) checks were never deposited because at the time the plaintiff received them it was reasonable to suppose they would be dishonored. Therefore, plaintiff kept the envelopes in which they were received. The first check is dated June 3rd, metered June 4th and postmarked June 8th. The second is dated June 3rd, metered June 4th and postmarked June 6th. The third is dated June 5th, the day after the release is dated, metered June 7th and postmarked June 8th. The fourth is dated June 5th, the day after the release is dated, metered June 6th and. is not postmarked. (Plaintiff's Exhibits Nos. 19–22 inclusive.)

A third check is also dated the day after the release. (Plaintiff's Exhibit No. 18.)

11. Timbs admitted he left the bonded warehouse unattended and unlocked and on occasion left unauthorized personnel in charge who released merchandise.

12. Plaintiff has received a 30% payment, 5% from the creditors' committee and 25% in the Chapter 11 proceeding, in the sum of $2,559.50 on the eighteen (18) checks involved in this litigation. The balance due is $6,208.00.

13. Timbs must have known that Ewing was insolvent. Ewing testified that this was a matter of public knowledge throughout that entire section of the State of Florida. He also stated that he could not meet his payroll on many occasions and had to pay his 130 employees with cash from the auction. Ewing further testified that many of his checks were returned as worthless throughout April and May and that creditors were constantly pressing him. It was highly probable that Timbs, who worked in the same precincts as Ewing's place of business, knew this. Timbs knew that checks of Ewing were being dishonored in April and May, 1957.

14. The defendant, whose warehouse was actually in the premises of Ewing, did not notify the plaintiff in New York that the said Ewing was insolvent.

## CONCLUSIONS OF LAW

■ 1. The Court has jurisdiction of the parties and of the subject matter. 28 U.S.C. § 1332. The rights of the parties are governed by the law of Florida.

■ 2. The contract between plaintiff and defendant was a contract of bailment.

■ 3. Defendant acted without authority when it released goods either (a) without a check from the purchaser and a notice of release of the merchandise to the seller, or (b) in return for a postdated check, or (c) with the understanding that the transmission to the plaintiff of the purchaser's check and the notice of release of merchandise would be delayed.

■ 4. A bailee in possession of a chattel who disposes of it in a manner not authorized by the bailment is liable to his bailor for conversion. See Star Fruit Co. v. Eagle Lake Growers, 160 Fla. 130, 33 So.2d 858 (1948); Restatement, Torts §§ 232, 234 (1934); Restatement (Second) Torts, Explanatory Notes § 232 (Tent. Draft No. 3, 1958); 1 Harper and James, The Law of Torts, 144 (1956); Prosser on Torts, 70, 73 (2d ed. 1955).

5. Defendant is liable to plaintiff for the conversion of plaintiff's goods in the sum of $8,767.50.

■ 6. Defendant, as a converter of plaintiff's merchandise, is liable to him for the full value of the merchandise.

7. However, as defendant became the owner of the merchandise once he had converted it, he is entitled to be credited with the sum of $2,559.50 heretofore paid to plaintiff as the result of a creditors' proceeding.

8. Defendant therefore owes plaintiff the difference between $8,767.50 and $2,559.50, or $6,208.00, plus interest.

Submit proposed judgment on notice.