155 So.2d 159 (1963)
GENERAL FINANCE CORPORATION OF JACKSONVILLE, INC., a corporation, and General Finance Corporation of Florida, East, a corporation, Appellants,
v.
Frank W. SEXTON, Appellee.
No. E-8.
District Court of Appeal of Florida. First District.
July 16, 1963.
*160 Adam G. Adams, II, of McCarthy, Adams & Foote, Jacksonville, for appellant.
Carl G. Swanson and Evan T. Evans, Jacksonville, for appellee.
RAWLS, Judge.
In an action for conversion of an automobile belonging to defendant Frank W. Sexton, General Finance Corporation appealed from a jury verdict and judgment in the sum of $1,000. By stipulation $450.00 of the judgment is compensatory damages with the balance being considered punitive damages.
The essence of the action as apparently found by the jury from the myriad of conflicting facts was that General Finance Corporation, assignee of a retail installment contract covering Sexton's automobile, kept its records on Sexton's account in such a state of confusion that it caused its collecting agents to make numerous calls upon the plaintiff, made conflicting statements about the status of the account, failed to acknowledge one payment for over two months after it was received, notified plaintiff that his car was repossessed (although arguing at the trial and on appeal that it was just a "paper" repossession), and finally refused to accept one payment having already repossessed the automobile by causing title to be transferred to it by the Motor Vehicle Commissioner. Several months prior to the repossession, the vehicle had been delivered to City Motor & Transmission Exchange, Inc. for the purpose of installing a factory rebuilt motor. Because of a dispute between Sexton and City Motor as to the terms of their oral agreement, the automobile had remained in the possession of City Motor at all times since delivery to them. There is no evidence that City Motor took any action to enforce a claim of lien and pending litigation between it and Sexton is being held in abeyance pending the outcome of the instant case.
The three points submitted by the appellant to this court on appeal are:
1. Did the "repossession" amount to a wrongful deprivation of property so as to satisfy that essential element of conversion?
*161 2. Can there be conversion when the vehicle was in the possession of a third party?
3. Was there any legal basis for assessment of punitive damages?
That disseisin of chattels which is called conversion has been described as an "act of dominion wrongfully asserted over another's personal property inconsistent with his ownership therein", "an act in derogation of plaintiff's possessory rights", "interference with the dominion of the true owner", "unauthorized assumption of powers of the true owner" and by many other well known and often quoted descriptive phrases.[1] The gist of the action is interference with legal rights which are incident to ownership[2] or the wrongful deprivation of the property of the owner and neither manucaption nor asportation is an essential element thereof.[3]
The legal efficacy accorded the registered title holder of a motor vehicle by statute[4] is the strongest indication of ownership afforded any type of personal property and rights of ownership are dependent thereon. A wrongful transfer of title to a motor vehicle by the appellant corporation could hardly be less than a disseisin of the owner, and interference with legal rights which are incident to ownership, and a deprivation of the owner's dominion of his property permanently or for an indefinite time.
Under the second point appellant's argument that there can be no conversion while the automobile was in the possession of a third party which had a claim of lien, is based upon two factors: First, there can be no conversion where the plaintiff was not entitled to possession, and secondly, there can be no conversion where plaintiff violated his agreement under the retail installment contract to keep the automobile free from liens. The right of an owner to possession of his chattel is one incident to ownership and the deprivation of same is one of the most common factors giving rise to actions for conversion. As noted above, the interference of any legal right incident to ownership may amount to a conversion, and the act of transferring title to a motor vehicle is sufficient to deprive the owner of his right of possession as between the parties in litigation irrespective of the unsettled dispute between the owner and a third party.
The trial court denied the finance company's motion for a directed verdict on the grounds that Sexton had breached the terms of the contract which required him to keep the vehicle free of liens. The reasoning of the trial court was that neither party could possibly have intended that the contract provision prohibited delivery of possession of the car to a garage to have it repaired, so the contract provision was not breached until the garage asserted its lien. With this we agree.
Considering now the question of punitive damages, we note that the amended complaint alleges only that the conversion was committed "wrongfully, unlawfully, willfully and maliciously". Such adverbs in the absence of allegations of general facts and circumstances of fraud, malice, gross negligence, or oppression have been held insufficient to warrant recovery of punitive damages.[5] The proofs as viewed most favorably for the appellee show apparent continued confusion of appellee's account, contradictory statements attributed to the finance company's agents as to the status of the account, and the company's attempt to disclaim any actual repossession *162 after it had informed appellee that his car had been "repossessed".
The general rule is that exemplary or punitive damages are given solely as punishment where torts are committed with fraud, actual malice, deliberate violence, or oppression or with such gross negligence as to indicate a wanton disregard of the rights of others. Punitive damages are damages in excess of compensation and are authorized to be inflicted when the wrong done partakes of a criminal character, though not punishable as such, or consists of aggravated misconduct or a lawless act resulting in injury to the plaintiff.[6]
The finance company submits that the facts in the instant case could not sustain a verdict for punitive damages in view of the decision in Winn & Lovett Grocery Co. v. Archer,[7] reversing a judgment awarding punitive damages in an action for assault, battery and false imprisonment. The Supreme Court speaking through Mr. Justice Davis found that there was ample proof of circumstances of aggravation attending the tort sued for to sustain an enhanced allowance of compensating damages for such intangible elements as wounded feelings, public degradation, personal indignity and the like accompanying defendant's alleged assault, battery and false imprisonment regardless of the defendants' good faith in believing themselves warranted in taking the course of action they did. But a tort committed by mistake in the bona fide assertion of a supposed right will not warrant the giving of punitive damages where all the elements of the aggravation are authorized to be included in the compensatory award. That is to say, if the indignity suffered, the humiliation experienced, and the like are elements of compensatory damages, as is true for the tort of false imprisonment, these same elements cannot be the basis of an inference of deliberate violence, oppression, malice or outrage for the purpose of awarding exemplary or punitive damages which may be based only upon acts exceeding those permitted to the defendant had he not been mistaken in his bona fide assertion of his supposed right.
The record is devoid of any deliberate violence, malice, or other acts which exceed those permitted defendant had it not been mistaken in its bona fide assertion of a supposed right. Therefore, any claim Sexton may have for punitive damages must be based upon commission of the tort with implied malice, fraud or such gross negligence as to indicate a wanton disregard of the rights of others.
The evidence is undisputed that the Sextons made their payments irregularly by cash, money order, check, split cash payments, sometimes to one agent and sometimes to another; the finance company made a bona fide effort to correct its records and offered to recheck same if the Sextons found any other receipts for payments which had not been properly credited to their account. Furthermore, the only testimony with reference to the transfer of title was that the act was committed in order to protect the finance company's interests before City Motor asserted the lien. Consequently, the composite evidence is lacking in proof of such fraud, implied malice, or gross negligence as could be characterized as indicating a wanton disregard of the rights of others.
Punitive damages may be based upon direct or circumstantial evidence where there exists some reasonable basis for an inference of wantonness, actual malice, gross negligence or utter disregard of law. But, where there is no showing that the tort was committed in such a manner as to cause public degradation, personal indignity or other intangible elements of injury which are not recoverable as compensatory damages and where the act was committed *163 by mistake in a bona fide assertion of a supposed right and the acts constituting the tort are not atrocious, excessively violent or in any way exceeding the acts which defendant would have been authorized to do had it not been mistaken in its assertion of the supposed right, punitive damages are improper.
In view of our conclusions this cause is remanded to the trial court with directions to eliminate from the final judgment the sum stipulated by the parties as punitive damages.
Affirmed in part, reversed in part, and remanded.
CARROLL, DONALD, K., Acting Chief Judge and WIGGINTON, J., concur.
NOTES
[1] Star Fruit Co. v. Eagle Lake Growers, Inc., 160 Fla. 130, 33 So.2d 858 (1948).
[2] Ibid.
[3] West Yellow Pine Co. v. Stephens, 80 Fla. 298, 86 So. 241 (1920).
[4] Chapter 319, Florida Statutes, F.S.A.
[5] Anderson v. Burwell Motor Co., 73 So.2d 822 (Fla. 1954).
[6] Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936).
[7] Ibid.