348 So.2d 614 (1977)
CHARTER AIR CENTER, INC., a Florida Corporation, and William P. Cousins, Appellants,
v.
J. Fred MILLER, III, Appellee.
No. 76-1520.
District Court of Appeal of Florida, Second District.
July 1, 1977.
Rehearing Denied August 25, 1977.
*615 Selig I. Goldin, Goldin & Cates, Gainesville, for appellants.
Daryl J. Brown, Rosin, Abel, Band, Rosin & Brown, Sarasota, for appellee.
BOARDMAN, Chief Judge.
Appellants/defendants, Charter Air Center, Inc., and William P. Cousins, appeal a final judgment entered pursuant to a jury verdict awarding appellee/plaintiff, J. Fred Miller, III, $11,000 plus interest compensatory damages and $7,000 punitive damages.
Miller and Charter Air entered into a written contract for sale to Miller of a 1975 Piper airplane with certain specifications. Randolph Dodson, a salesman for Charter Air, conducted all the negotiations with Miller, and Dodson signed the contract for Charter Air. In early June, 1975, Miller delivered an $11,000 check made to Charter Air as down payment for the airplane. On August 1, 1975, Miller cancelled his order and requested the return of his deposit. Cousins, the president and sole stockholder of Charter Air, did not refund the down payment.
Miller subsequently filed a one-count complaint against Charter Air and Cousins seeking compensatory and punitive damages. Pertinent portions of the complaint are:
5) That prior to entering into said written agreement, Defendants and each of them represented to Plaintiff that Defendant, Charter Air Center, Inc., was an authorized and reputable Piper dealer in good standing and capable of ordering from the Piper Aircraft Company the aircraft that is the subject matter of this action, and that the subject aircraft would be promptly ordered as soon as Plaintiff paid the required down payment.
.....
7) That Defendants received the down payment as paid by Plaintiff, but made no effort whatsoever, as of this date, to order the subject aircraft, and that, in fact, Defendant, Charter Air Center, Inc., had previously lost its Piper franchise and was not even capable of ordering the aircraft as of the date of the written agreement.
8) That Defendants and each of them enticed Plaintiff to enter into the subject written agreement and pay the subject down payment, without ever having the capability or intent of ordering the subject aircraft, and with the specific intent of defrauding Plaintiff out of the subject down payment and converting the said down payment to their own uses and purposes.
.....
10) That in breach of the aforementioned written agreement, Defendants and each of them have failed and refused to return to Plaintiff his aforesaid down payment, and have failed and refused to deliver the certain Piper aircraft to Plaintiff within the specified time.
.....
12) That, as a direct and proximate result of the aforementioned fraudulent misrepresentation of Defendants and each of them, Plaintiff has suffered actual damages in the amount of Eleven Thousand Dollars ($11,000.00), plus interest from June 4, 1975, and that Plaintiff is also entitled to recover punitive damages from Defendants and each of them in an amount exceeding Ten Thousand Dollars ($10,000.00).

*616 13) That Plaintiff has performed all conditions precedent to bringing this action and that performance was due to Plaintiff, pursuant to said written agreement, in Sarasota County, Florida.
Cousins and Charter Air answered and filed affirmative defenses and a counterclaim for breach of contract against Miller.
We hold that as a matter of law appellee is not entitled to punitive damages from either Charter Air or Cousins or to compensatory damages from Cousins. Appellants have not raised on appeal the question of whether Charter Air is liable for compensatory damages, and the verdict reached by the jury on this issue will not be disturbed.
It is well established that punitive damages may be properly awarded only where the basis for the action is a tort "which involve[s] ingredients of malice, moral turpitude, or wanton and outrageous disregard of the plaintiff's rights." 9 Fla. Jur. Damages § 119 (1956). Appellee argues in the case before us that he is entitled to punitive damages based on two causes of action in tort: fraudulent representation and conversion. A close reading of the complaint and transcript of the proceedings in light of the applicable case law reveals, however, that appellee has neither specifically alleged nor proved the elements of a cause of action for fraudulent representation or conversion. See Ramel v. Chasebrook Construction Co., 135 So.2d 876 (Fla.2d DCA 1962). The elements of fraudulent representation are: a false statement pertaining to a material fact, knowledge that it is false, intent to induce another to act on it, and injury by acting on the statement. 14 Fla.Jur. Fraud and Deceit (1975). Appellee did not allege nor show that he relied on the allegedly false statement that Charter Air was a Piper dealer and could deliver the airplane. Furthermore, the evidence uncontrovertibly establishes that although Charter Air was not a Piper dealer it had the capability of delivering the airplane ordered by Miller and that it had actively negotiated with both a Piper franchiser and a Piper dealer for delivery of the model airplane ordered by appellee. Therefore, even if appellee had relied on a misrepresentation, he suffered no damages or injury from that reliance. The essential element of conversion is wrongful deprivation of property to a person entitled to possession. Star Fruit Co. v. Eagle Lake Growers, Inc., 160 Fla. 130, 33 So.2d 858 (Fla. 1948). Appellee alleged in his complaint that the conversion was accomplished by a wrongful taking of the deposit and by misuse of these funds. Nevertheless conversion has not been established in the case before us since appellee has not shown that he was wrongfully deprived of funds under either of those theories. Appellee admits that he voluntarily paid over the down payment to Charter Air and did not bring out evidence of any act committed by Cousins or by agents of Charter Air which would constitute a wrongful taking. Appellee also failed to introduce any facts to support his allegation that Cousins individually or as an agent for Charter Air converted the down payment by using the funds for his own purpose. Moreover, appellee did not support his request for award of punitive damages for a conversion, because he did not prove that if a conversion were committed that it was wilfully and wantonly committed with malice or gross negligence.
Since we have determined that appellee is not entitled to recovery on a tort theory, the only theory which would support an award of damages is breach of contract. Punitive damages are not a proper item of damages for breach of contract unless the act complained of constitutes a tort which was wilfully and wantonly committed or was attended by fraud, malice, or gross negligence. E.g., Griffith v. Shamrock Village, Inc., 94 So.2d 854 (Fla. 1957); Moore v. Southern Bell Telephone & Telegraph Co., 176 So.2d 558 (Fla.2d DCA 1965). As we have stated previously it was not refuted that attempts were made to fulfill Charter Air's contractual obligation to secure the airplane ordered by appellee.
An officer or shareholder of a corporation cannot be held personally liable on a contract unless he signed the contract in his individual capacity or unless the nature *617 of the corporation was such that the corporate entity should be disregarded such as where it was established or used for fraudulent purposes or where the corporation was merely the alter ego of the shareholder. E.g., Levenstein v. Sapiro, 279 So.2d 858 (Fla. 1973); Advertects, Inc. v. Sawyer Industries, Inc., 84 So.2d 21 (Fla. 1955); Riley v. Fatt, 42 So.2d 769 (Fla. 1950). Cousins did not participate in the sale of the airplane to Miller nor did Cousins sign the sales contract in any capacity. No allegations were made in the complaint nor was it shown at trial that Charter Air was formed or used for fraudulent purposes or that Charter Air was the alter ego of Cousins. Cousins could not then be held personally liable for breach of the contract.
In view of our disposition of these issues, the other points raised on appeal need not be addressed.
Accordingly, the final judgment is reversed as to the award of punitive damages against Charter Air and Cousins, reversed as to the award of compensatory damages against Cousins, and affirmed as to the award of compensatory damages against Charter Air.
AFFIRMED IN PART and REVERSED IN PART.
OTT, J., concurs.
GRIMES, J., dissents with opinion.
GRIMES, Judge, dissenting
I must respectfully dissent.
Dr. Miller wanted a certain type of Piper airplane for delivery by no later than a specific date. In the course of negotiations for the purchase of this airplane, Randy Dodson told him that Charter Air was an authorized Piper aircraft dealer. Dodson confirmed that he had made this representation upon the direction of William Cousins, who was the president and sole stockholder of Charter Air. The truth of the matter was that Charter Air's dealership had been cancelled several months before, and Charter could no longer obtain Piper aircraft at a dealer discount. While this would not have precluded Charter from ordering the aircraft through another dealer, the record suggests that Charter Air would have been in a better position to promptly furnish the aircraft had it been an authorized dealer.
Miller's $11,000 check was deposited in Charter Air's bank account on Friday, June 6, 1975. By the following Monday, most of the money was withdrawn to pay operating expenses. While Charter Air made some inquiries about this type of airplane of Piper's statewide distributor and a Piper dealer in North Carolina, no order was ever placed because Charter Air declined to furnish the requested deposit. The bank records for the period of time in question reflect that Charter was seldom in a position to pay the $10,000 deposit which would have been necessary to insure the delivery of the airplane. In the meantime, Dodson said that Cousins told him to imply to Miller that the airplane he had ordered was in the process of being manufactured. Finally, the several aircraft being manufactured which would have met Miller's specifications were sold to third parties, and no others were available. Upon being told by Dodson that the airplane had never been ordered, Miller demanded the return of his deposit from Cousins which was refused. When Cousins was advised that Miller was likely to sue, Dodson reported that Cousins said:
"... I can rearrange things and move things out of here so fast there won't be anything for Doctor Miller to get."
Thus, it could be inferred that the corporation made false representations to obtain Dr. Miller's deposit which could be used to pay other bills, rather than to furnish the airplane. Therefore, the jury had a right to conclude that a fraud had been perpetrated which constituted an independent tort involving moral turpitude upon which an *618 award of punitive damages could be made. Griffith v. Shamrock Village, 94 So.2d 854 (Fla. 1957). Acknowledging that punitive damages cannot be awarded for breach of contract by itself, the court in Associated Heavy Equipment Schools v. Masiello, 219 So.2d 465 (Fla.3d DCA 1969), upheld an award of punitive damages when there was evidence of fraud in the inducement of the contract.
Though there was no proof that Cousins actually converted any of the money to his personal use, if Dodson is to be believed, Cousins was the architect of the fraud. While a corporate officer is not normally liable for the fraud of other officers or agents of the corporation simply because of his official character, he can be held individually liable for fraudulent acts of his own or those in which he participates. Ramel v. Chasebrook Construction Company, 135 So.2d 876 (Fla.2d DCA 1961). Cf. Levenstein v. Sapiro, 279 So.2d 858 (Fla. 1973). 19 Am.Jur.2d Corporations § 1383. In Lloyd v. DeFerrari, 314 So.2d 224 (Fla.3d DCA 1975), the court upheld a judgment for punitive damages against the sole stockholder of a corporation who had acted for the corporation in fraudulently selling a boat with the knowledge that it was previously stolen.
I believe there is sufficient evidence in the record to support the jury verdict of compensatory and punitive damages against both defendants.