## SHIVELY v. FLORIDA POWER & LIGHT CO.
No. 78-1486-08.
Circuit Court, Dade County.
April 17, 1978.

Fred M. Penny, Perrine, for the plaintiff.

Joseph P. Klock, Jr. of Steel, Hector & Davis, Miami, for the defendant.

FRANCIS X. KNUCK, Circuit Judge.

This matter came before the court on motions to strike and to dismiss filed by the defendant, Florida Power & Light Company. For reasons set forth below, both motions of the defendant have been granted, and a preliminary injunction granted earlier in the case is hereby dissolved.

The allegations and all reasonable, favorable inferences which can be drawn from them as set forth in the complaint form the basis of the facts recited in this opinion.

The plaintiff is an individual engaged in a commercial business enterprise located in southwest Dade County. His business had been in existence for five years at that location when the action was filed. In August 1977 plaintiff requested that defendant's representatives come to his place of business to inspect its equipment since plaintiff claimed that his electricity costs had increased by approximately 100 percent in the preceding two months. On August 19, 1977, representatives of defendant appeared at plaintiff's place of business and asked him to accompany them to the meter room. The meter room was located outside of the building and housed several meters for various businesses in the area. According to the plaintiff, the building was not locked and was available to anyone.

The plaintiff claims that after inspection of the meter, defendant's agents advised him that the seal on his meter had been cut prior to their inspection, and that the "shunting lever was in an up position diverting current around the meter." Plaintiff claimed no knowledge as to how that condition came about.

Following that, and on or about November 30, 1977, plaintiff received a bill from defendant for an additional 39,838 kilowatt hours, or $1,735.35. Plaintiff claims that he called the defendant and was advised by defendant's representative that defendant had determined that "there was a 50 percent diversion for two and one-half years prior to August, 1977." Plaintiff further claimed that he was advised that unless he came down to defendant's office and signed a statement that he owed the sum of $1,735.35, furnished a deposit of $500, and agreed to make three monthly payments for the balance of the amount due, that defendant would shut off his power. When plaintiff refused to sign such a statement, he claims that his electric power was shut off by defendant without notice.

Plaintiff claimed that this conduct was "negligent, wrongful, willful and malicious," and that his "business has been irreparably damaged by being unable to operate . . ., by losing contracts and

future business, by embarrassment by fellow businessmen and mental and physical anguish." In addition to seeking an injunction from future harassment from defendant, together with punitive and compensatory damages in excess of $2,500, plaintiff sought an emergency order without notice commanding defendant to reconnect plaintiff's power. The court entered such an order, predicated upon the posting of a $500 cash bond, which was done. After it was served, defendant filed a motion to strike and a motion to dismiss. In its motion to strike, defendant asked that the claim for punitive damages, for embarrassment, and mental and physical anguish be stricken from the complaint. The defendant also sought a dismissal of the entire complaint on the grounds that the subject matter of the action fell exclusively within the jurisdiction of the Public Service Commission.

Turning first to the motions to strike and to dismiss for failure to state a cause of action, it is established black letter law in this state that ultimate facts must be alleged in a complaint sufficient to establish the existence of the elements of punitive damages. The mere recitation of rubrical words such as "wrongful, willful, and malicious action" will not do and are simply insufficient to set forth a claim for punitive damages. Such language "in the absence of allegations of general facts and circumstances of fraud, malice, gross negligence, or oppression have been held insufficient to warrant recovery of punitive damages." *General Finance Corp. v. Sexton,* 155 So.2d 159, 161 (Fla. 1st DCA 1963), citing *Anderson v. Burwell Motor Co.,* 73 So.2d 822 (Fla. 1954). This general principle applies as well to service termination cases. See *Moore v. Southern Bell Telephone & Telegraph Co.,* 176 So.2d 558 (Fla. 2d DCA 1965).

Likewise, when a complaint sounds in contract, such as this one does, there can be no recovery of punitive damages unless ultimate facts are set forth in the complaint sufficient to establish the existence of a separate and independent tort. *Country Club of Miami Corp. v. McDaniel,* 310 So.2d 436 (Fla. 3d DCA 1975); *McDonald v. Penn Mutual Life Insurance Co.,* 276 So.2d 232 (Fla. 2d DCA 1973); *Associated Heavy Equipment Schools, Inc. v. Masiello,* 219 So.2d 465 (Fla. 3d DCA 1969). This complaint clearly does not set forth allegations sufficient to demonstrate the existence of such a separate tort and is thus defective.

Finally, the plaintiff's attempt to recover damages for embarrassment, mental and physical anguish, is unavailing. Under Florida law, damages for breach of contract are limited to the pecuniary loss sustained. *McDonald v. Penn Mutual Life Insurance Co.,* 276 So.2d 232 (Fla. 2d DCA 1973). An award for embarrassment, mental and physical anguish is not permitted. *Henry Morris and*

*Flagler Museum v. Lee,* 268 So.2d 434 (Fla. 4th DCA 1972). Indeed, recovery for mental and physical anguish is only available when ultimate facts demonstrating the existence of an impact have been set forth. *Herlong Aviation, Inc. v. Johnson,* 291 So.2d 603 (Fla. 1974); *Steiner and Munach, P. A. v. Williams,* 334 So.2d 39 (Fla. 3d DCA 1976), cert denied, 345 So. 2d 429 (Fla. 1977). Obviously, the complaint is without allegations claiming any impact whatsoever.

These deficiencies alone, of course, justify the entry of an order striking certain portions of the complaint and even an order of dismissal. However as the allegations set forth in the complaint demonstrate that this court is without jurisdiction to entertain this action at all, a dismissal is mandated.

The entire area of utility regulation involves certain overlapping of the jurisdiction of the circuit courts and the Public Service Commission. Over the years the trial and appellate courts have dealt with these jurisdictional questions, and some rather clear cut guidelines have developed. This case falls into one of those delineated areas.

Basically, the case law seems to suggest that when a customer is prosecuting a claim against a utility for damages arising out of the negligent manner in which the utility has provided services in the past, or where the claim relates to the quality or performance of services, then the claim may fall within the jurisdiction of the circuit court. However, where a customer has a dispute relating to rates, the implementation, or improvement of service, other such complaints, or areas where the Public Service Commission has created a scheme of regulation, then the matter falls within the exclusive jurisdiction of the commission. See e.g., *Mobile America Corp. v. Southern Bell Telephone & Telegraph Co.,* 282 So.2d 181 (Fla. 1st DCA 1973); affirmed 291 So.2d 199 (Fla. 1974); *Florida ex rel. McKenzie v. Willis,* 310 So.2d 1 (Fla. 1975).

The starting point in determining primary jurisdiction must be with the regulations of the Florida Public Service Commission. Obviously, the areas which will be exclusively controlled by the commission must be those areas where its peculiar interest is expressed. The root of such discernible interest lies within the rules and regulations of the commission. See Fla. Admin. Code §§25-6.01-6.105.

Fla. Admin. Code §25-6.01 states that "the commission shall have the power to prescribe . . . service rules and regulations to be observed by each public utility . . . [and] to prescribe all rules and regulations reasonably necessary and appropriate for the administration and enforcement of this chapter . . ." Further, those same regulations state that they "shall apply to all electric public utilities

operated under the jurisdiction of the Florida Public Service Commission." Further "[t]hey are intended . . . to establish the rights and responsibilities of both the utility and the customer." Fla. Admin. Code §25-6.02.

Fla. Admin. Code §25-6.104 states "In the event of unauthorized use, the utility may bill the customer on a reasonable estimate of the energy used." The utility is authorized to refuse or to discontinue service if a customer has failed to pay a bill, has failed to comply with the utility's rules and regulations, has tampered with meters or other facilities furnished or owned by a utility, or has engaged in unauthorized or fraudulent use of service and has either refused to eliminate illegal use or refused to pay "an amount reasonably estimated as the loss in revenue resulting from such fraudulent use." Fla. Admin. Code §25-6.105(5(e)(g)(i)(j).

Indulging every favorable inference in favor of the plaintiff and against the defendant, it is clear that the complaint sets forth a dispute between the parties having to do with the right of the defendant to have determined and to have informed a customer that a current diversion exists, to have estimated the cost of the current which had been diverted, to have demanded the payment of that amount, and to have terminated service when the plaintiff refused to pay. It is clear that each of those complaint elements involves areas where the Public Service Commission has expressed a particular interest in its regulatory scheme. Furthermore, it is equally clear that the complaint has nothing to do with the past quality of defendant's performance, the quality of its service, or the like. Indeed, it is clear that until the current was turned off, plaintiff had no complaint with defendant.

In *Mobile America,* the District Court of Appeal, First District, on rehearing, clearly distinguished between the kind of case involved in this complaint, which falls exclusively within the jurisdiction of the Public Service Commission, and a complaint which sounds in tort for improperly provided or negligently provided utility service. Id., 282 So.2d 181, 183-86 (Fla. 1st DCA 1973).

The dismissal of this action by this court does not leave plaintiff without a remedy. To the contrary, insofar as he has a dispute regarding the right of the utility to determine the existence of and to estimate a charge for current diversion and to terminate service for the alleged refusal of a customer to make payment, the Florida Public Service Commission is the proper tribunal to raise such claims. And, review of orders of that tribunal is available in the Supreme Court of Florida.

The jurisdiction of the Public Service Commission being primary, this court lacks jurisdiction over the subject matter to resolve

those claims. And, even if the court had jurisdiction over the subject matter, the complaint is clearly insufficient to state any cause of action cognizable under Florida law. The action is therefore dismissed.

Since the complaint serves as the lifeblood for any injunction, the dismissal of the complaint is fatal to the continuance of the injunction. Therefore, the preliminary injunction entered by this court on February 9, 1978, be and the same is hereby vacated and terminated. Defendant shall no longer be bound under the terms of that order.

The bond of $500 posted by the plaintiff as a condition to the issuance of this court's injunction was conditioned upon plaintiff paying any damages that might accrue as a result of the entry of the injunction and to pay all costs and damages that the defendant might sustain as a result of the injunction being improperly issued. Since this court's order directed defendant to reconnect service, there may well be damages suffered as a result of this injunction being entered. The clerk of the circuit court is directed to retain control over that bond for a period of 15 days within which defendant shall be entitled to file a motion seeking a portion of that bond as damages, upon a proper showing.

The filing of such a motion will stay the distribution of any funds held by the clerk until such time as this court shall rule on the motion. If no such application is made to the court within that period of time, then the clerk is directed to distribute to the plaintiff upon his request all monies held in the registry of the court, less any service charges ordinarily charged by the clerk. As to all matters save the distribution of monies held in the registry of the court, jurisdiction of this court is hereby discharged this day, and this order shall be deemed final as to all other issues raised in this action.