In re GUARDIAN EQUIPMENT CORPO-RATION, f/k/a Guardian Security Equipment, Inc., Debtor.

GUARDIAN EQUIPMENT
CORPORATION,
Plaintiff,

v.

Thomas L. MONZ, Defendant.

Bankruptcy No. 81–01452–BKC–SMW.
Adv. No. 82–0544–BKC–SMW–A.

United States Bankruptcy Court,
S. D. Florida.

May 25, 1982.

Patricia A. Redmond, Miami, Fla., for plaintiff.

Terry E. Resk, Lavalle, Wochna, Rutherford & Truesdell, Boca Raton, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE, coming on to be heard upon a Debtor in Possession's Complaint to recover property of the estate and the Counterclaim thereto filed herein, and the Court, having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses;

considered the arguments of counsel, and the Court having jurisdiction over the parties and subject matter of this action, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

The Complaint of Plaintiff, Guardian Equipment Corporation, f/k/a Guardian Security Equipment, Inc., Debtor in Possession (hereinafter referred to as "Debtor"), seeks recovery of one (1) 1980 Cadillac Eldorado automobile, pursuant to 11 U.S.C., § 541(a)(1), and a money Judgment in the amount of One Thousand, Five Hundred, Twenty-One and 72/100 ($1,521.72) for the conversion and unauthorized possession of said vehicle by Defendant, Thomas L. Monz (hereinafter referred to as "Monz"). Monz answered, denying the material allegations of the Complaint, raising affirmative defenses and counterclaiming for monies allegedly owed to Monz pursuant to a loan made to the Debtor by Monz in 1978, for which there allegedly remains due and owing approximately $54,000.00. The matter was tried before this Court on April 28, 1982.

The material facts adduced at trial evidence that Defendant, Monz, is the former President and former Director of the Debtor. In such capacity, Monz took possession of one (1) 1980 Cadillac Eldorado automobile then acquired by the Debtor. Monz resigned as President of the Debtor on May 13, 1981.

Subsequently, at a Board of Directors Meeting of the Debtor on May 19, 1981, Monz refused the position of Vice President of the Debtor and acquiesced to the election of officers and other occurrences at said meeting. Thereafter, the events occurring at the meeting of the Board of Directors of May 19, 1981, were ratified at a meeting of the shareholders and directors of the Debtor on June 12, 1981.

Monz received written notification during the first week of June, 1981, that his authorized use of the subject vehicle was revoked, effective July 15, 1981.

Monz failed and refused to turn over the subject vehicle on July 15, 1981, pursuant to said revocation of authorization. Monz retained the 1980 Cadillac for four (4) additional months, until November 20, 1981, when Monz relinquished possession of said automobile directly to the secured lender, Sun Bank of Broward, N. A., thus increasing the Debtor's loan balance by $380.43 per month for four (4) additional months, for a total of One Thousand, Five Hundred, Twenty-One and 72/100 ($1,521.72) Dollars.

At the trial of this adversary proceeding, it was stipulated that Monz' Counterclaim would be voluntarily dismissed, without prejudice to Monz' right to file a Proof of Claim in the Debtor's Chapter 11 Proceeding reflecting the alleged indebtedness of Fifty-Four Thousand Dollars ($54,000.00). It was further stipulated that the 1980 Cadillac automobile, property of the estate pursuant to 11 U.S.C., § 541(a)(1), had been returned to the secured lender, Sun Bank of Broward, N. A., on November 20, 1981.

The only issue which this Court must determine is whether the Debtor is entitled to damages for Monz' retention of possession of the 1980 Cadillac automobile for a four-month period after the authorization for use had been revoked, which directly and proximately caused the increased balance on the Sun Bank loan.

Debtor bases its claim that One Thousand, Five Hundred, Twenty-One and 72/100 Dollars ($1,521.72) is recoverable by the estate on a theory of conversion. The Florida Supreme Court has spoken clearly on this subject in its decision in *Star Trust Co. v. Eagle Lake Growers, Inc.,* 33 So.2d 858 (Fla.1948). In interpolating the common law definition of conversion, that Court quotes:

"The gist of a conversion has been declared to be not the acquisition of the property of the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled. A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession,

permanently or for an indefinite time, is a conversion." 53 Am.Jur., p. 822.

■ It is clear, based on the facts, that the unauthorized retention of the 1980 Cadillac by Monz constitutes a conversion.

■ The Court now turns its attention to the issue of damages to be awarded for the conversion of the 1980 Cadillac. Debtor has prayed for both compensatory and punitive damages. The Court finds that the award of compensatory damages in the amount of Three Hundred, Eighty and 43/100 Dollars ($380.43) per month, representing the increase in the loan balance resulting from Monz' unauthorized retention of the subject vehicle, to be appropriate, but denies Debtor's prayer for an award of punitive damages.

The general rule is that exemplary or punitive damages are given solely as punishment where torts are committed with fraud, actual malice, deliberate violence, or oppression or with such gross negligence as to indicate a wanton disregard of the rights of others. Punitive damages are damages in excess of compensation and are authorized to be inflicted when the wrong done partakes of a criminal character, though not punishable as such, or consists of aggravated misconduct or a lawless act resulting in injury to the plaintiff. *General Finance Corp. of Jacksonville, Inc., v. Sexton*, 155 So.2d 159 (Fla. 1st DCA 1963).

■ The evidence presented by the Debtor is lacking in proof of such fraud, malice or gross negligence so as to warrant an award of punitive damages.

Debtor further relies upon 11 U.S.C., § 541(a)(1), which defines property of the estate as:

"the following property, wherever located: ... all legal or equitable interests of the debtor in property as of the commencement of the case."

The legislative history interpolating this provision emphasizes its pervasive reach:

"The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action [see Bankruptcy Act, § 70(a)(1) ], and all other forms of property currently specified in section 70a of the Bankruptcy Act § 70a, as well as property recovered by the trustee under section 542 of proposed title 11, if the property recovered was merely out of the possession of the debtor, yet remained "property of the debtor." The debtor's interest in property also includes "title" to property, which is an interest, just as are a possessory interest, or leasehold interest, for example." H.R.Rep.No.95–595, 95th Cong., 1st Sess., at 367 (1977); S.Rep.No.95–989, 95th Cong., 2d Sess., at 82 (1978), U.S. Code Cong. & Admin.News 5787, 5868, 6323.

■ Under the facts currently before this Court, it is clear that the Debtor had title to the subject 1980 Cadillac automobile and, despite the subject vehicle being out of the possession of the Debtor, it remained property of the estate. Further, 11 U.S.C., § 542, details the Court's authority to order a turnover of property to the Trustee or Debtor in Possession, in stating that:

"an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."

In the case, *sub judice*, the evidence is undisputed that the subject vehicle was turned over to the secured lender, Sun Bank of Broward, N. A., on November 20, 1981. The only value remaining to be accounted for by Monz is the diminution in equity resulting from Monz' unauthorized retention of the vehicle for the four (4) additional months (July 15, 1981, to November 20, 1981) in the total amount of One Thousand, Five Hundred, Twenty-One and 72/100 ($1,521.72) Dollars.

Monz contends that his use of the 1980 Cadillac was not unauthorized, since his resignation as President of the Debtor was contingent upon payment of $25,000.00, and such contingency never occurred. The Court need not determine the validity of

this assertion in light of the fact that Monz was removed as President of the Debtor at a Board of Directors meeting on May 19, 1981. Monz was present and voting at that meeting; he refused the office of Vice President of the Debtor and acquiesced to the validity of the election of officers and other occurrences. Further, Monz was removed as a Director of the Debtor at a subsequent meeting of the Board of Directors and shareholders of the Debtor on June 12, 1981.

Additionally, Monz asserts that the Debtor has been released on its obligation for a deficiency by the secured lender, Sun Bank of Broward, N. A., and therefore has not suffered any damages. This assertion, however, is refuted by the unequivocable testimony of Sun Bank's loan officer.

In accordance with the foregoing, Monz will be ordered to turn over to the Debtor's estate the sum of One Thousand, Five Hundred, Twenty-One and 72/100 Dollars ($1,521.72) pursuant to 11 U.S.C., §§ 541(a)(1) and 542. Further, the Court, in the absence of the requisite wrongful intent by Monz in order to assess punitive damages, will deny Debtor's request that such award be assessed.