# WABASH POWER EQUIPMENT CO. v ZALKIN, et al.

Case No. 88-3991

Thirteenth Judicial Circuit, Hillsborough County

July 7, 1989

## APPEARANCES OF COUNSEL

W. M. Carson

George E. Nader

Eurich Z. Griffin

Michael K. Sweig

## OPINION OF THE COURT

GUY W. SPICOLA, Circuit Judge.

### ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

This matter is before the court on the motion of plaintiff WABASH POWER EQUIPMENT COMPANY ("Wabash") for summary judgment. WABASH seeks a determination that defendant MAX ZALKIN

("Zalkin") is individually and corporately liable for common law conversion. WABASH further moves for judgment on the pleadings and seeks a denial of ZALKIN'S affirmative defenses of negligence, bona fide chaser, estoppel and failure to mitigate damages.

## BACKGROUND

WABASH, an Illinois corporation dealing primarily in the purchase and sell of boilers, bought a 250 ton industrial boiler. WABASH disassembled the boiler and moved it and the accompanying equipment to a railyard in St. Petersburg, Florida. WABASH leased the railyard property. The boiler and equipment remained at the railyard for eight years until ZALKIN removed it. ZALKIN, a scrap dealer, allegedly purchased the boiler from JOHN CECIL NEWMAN ("NEWMAN").

On March 8, 1985 ZALKIN individually and through his corporation, MAX ZALKIN, INCORPORATED (d/b/a Bay Metals) paid defendant JOHN CECIL NEWMAN ("NEWMAN") $5,500 for certain industrial equipment. NEWMAN is alleged to have sold the equipment on behalf of Dallas based Economy Plumbing Company. Economy Plumbing Company was not an existing business entity at the time of the sale.

The boiler, equipment and motors were located in a railyard leased by WABASH from Seaboard Coastline Railroad Company. Using tourches, ZALKIN cut the boiler into pieces and removed the property from the railyard. ZALKIN sold the four motors to a power equipment company and sold the boiler and auxiliary equipment as scrap. WABASH denys NEWMAN'S authority to sell the boiler.

On April 4, 1985 NEWMAN was arrested for grand theft of the boiler, equipment and motors. WABASH filed a complaint for conversion of personal property against JOHN CECIL NEWMAN, MAX ZALKIN and MAX ZALKIN INCORPORATED.

## ISSUES

The issues now before the court are first whether ZALKIN has produced evidence to refute the elements of common law conversion; and second whether ZALKIN'S affirmative defenses are legally sufficient to survive a motion for judgment of the pleadings.

## DISCUSSION

The elements of common law conversion are: possession of the property; a taking of the property without authorization from the party entitled to possession; an exercise of dominion and control over the property by the taker which permanently deprives the plaintiff of

168

possession to its property; and consequent damages. *Star Fruit Co. v Eagle Lake Grower,* 33 So.2d 858, 860 (Fla. 1948); *Klein v Newburger, Loeb & Co.,* 151 So.2d 879, 880 (Fla. 3d DCA 1963); *Stearns v Landmark First National Bank,* 498 So.2d 1001, 1007 (Fla. 4th DCA 1986).

ZALKIN challenges the plaintiff's possession and asserts that WABASH abandoned the property. Abandonment requires a concurrence of the intent to abandon the property forever and a voluntary relinquishment of possession through some act or omission by which such intentions are carried into effect. 1 C.J.S. *Abandonment* § 3 (1985). Intent to abandon is evidenced by the acts and conduct of the owner. *Milford v Tennessee River Pulp and Paper Co.,* 355 So. 2d (Ala. 1978).

Factors involved in determining abandonment include: the nature of the property, intent to abandon, an external act evincing intent to abandon, and the party's conduct. Lapse of time and nonuse are also circumstances to be considered. Intent may be inferred from the circumstances by strong and convincing evidence. C.J.S. *Abandonment* § 5 (1985).

ZALKIN asserts that the condition and location of the equipment create an inference WABASH abandoned the property. According to ZALKIN, the disassembled boiler was rusted, surrounded by junk and looked like scrap. The equipment was piled outside in the open with no fence, protection or sign indicating private property. ZALKIN provides testimony indicating the railyard is located in a high crime area amid junkyards. ZALKIN claims the fact that WABASH did not discover the removal of the equipment until one year and two months later provides further support of abandonment.

WABASH denies any attempt to abandon the property. WABASH has produced evidence to show the equipment was stored on leased property while it was being actively marketed. WABASH maintains the property was carefully disassembled, treated for rust and neatly stacked. WABASH offers photographs to rebut ZALKIN'S contention the area was surrounded by garbage.

Generally, abandonment is a question of fact to be determined by the jury. *Rodgers v Crum,* 215 P.2d 190 (Kan. 1950). The factual dispute concerning the condition of the equipment and WABASH'S intention, accordingly, precludes summary judgment on the issue of abandonment.

Similiarly judgment on the pleadings of the affirmative defense of bonafide purchaser must be denied. The bonafide purchaser defense requires a knowing and voluntary relinquishment of the property by

**169**

the owner, two elements of abandonment. Abandoned personality becomes the property of the first person appropriating it with the intention to possess. *See* 1 C.J.S. *Abandonment* § 2 (1985). Because there is a dispute as to whether WABASH abandoned the property, judgment on the pleadings for the affirmative defense of bonafide purchaser must be denied.

ZALKIN'S last challenge to WABASH'S possession is a claim the equipment was stored subject to a bailment agreement with Seaboard Coastline Railroad. When bailment occurs, there is a delivery of possession, custody and control. *Bloom v Merrill Stevens Dry Dock Co.,* 409 So.2d 192 (Fla. 3d DCA 1982). The signed "lease" agreement between WABASH and Seaboard Coastline Railroad Company clearly evinces a landlord-tenant rather than a bailor-bailee relationship. The railroad provided no security for the equipment and exercised no control over it. ZALKIN'S bailment argument fails. *See Puritan Insurance Co. v Butler Aviation-Palm Beach, Inc.,* 715 F.2d 502 (11th Cir. 1983).

WABASH'S motion for judgment on the pleadings for ZALKIN'S sixteenth affirmative defense of waiver for failure to make a demand on a third party in possession of the equipment is granted. It is a long established principle of tort law that a wronged party may sue either or both joint tortfeasors who are or who may be liable for the alleged wrong. *Weaver v Stone,* 212 So.2d 80 (Fla. 4th DCA 1968).

WABASH'S motion for judgment on the pleadings for ZALKIN'S third and eighteenth affirmative defenses is granted. Both defenses, waiver and failure to mitigate, rely upon assertions of WABASH'S negligence. WABASH'S negligence is irrelevant to its intentional tort claim of conversion. *See Newhart v Prince,* 254 Cal. App. 783 (1st Dist. 1967); *Beverly Finance Company v American Casualty of Reading Pennsylvania,* Cal. App. 2d 259 (2d Dist. 1969). It is,

ORDERED AND ADJUDGED

1. Plaintiff's motion for summary judgment for common law conversion be denied, and it is further,

ORDERED AND ADJUDGED that Plaintiff's motion for judgment on the pleading be:

1. Granted with respect to the third affirmative defense of waiver or estoppel for failure to request the property from a third party.

2. Granted with respect to the sixteenth affirmative defense of waiver or estoppel for failure to protect the property.

170

3. Granted with respect to the eighteenth affirmative defense of failure to mitigate.

4. Denied with respect to the sixteenth affirmative defense of failure to mitigate.

DONE AND ORDERED in Tampa, Hillsborough County, Florida, this 7th day of July, 1989.