403 So.2d 602 (1981)
AMC/JEEP OF VERO BEACH, INC., and Roy Chapin, III, Appellants,
v.
James E. FUNSTON and Clark & Funston, Inc., a Florida Corporation, Appellees.
No. 79-1452.
District Court of Appeal of Florida, Fourth District.
September 16, 1981.
*604 Michael O'Haire and Thomas Thatcher of Smith, O'Haire, Thatcher & Quinn, Vero Beach, for appellants.
Samuel A. Block of Vocelle, Gallagher & Block, Vero Beach, for appellees.
HURLEY, Judge.
This appeal concerns the failure of a recently acquired auto dealership. Joseph Clark and James Funston purchased the assets of AMC/Jeep of Vero Beach, Inc. They, in turn, formed Clark & Funston, Inc. and operated the AMC/Jeep dealership for approximately eight to ten months. When the business failed, they instituted suit against the corporate seller, AMC/Jeep of Vero Beach, Inc., and its president/majority stockholder, Roy Chapin, III. A bench trial resulted in a verdict against both defendants in the sum of $36,000. We affirm in part and reverse in part.
The clearest aspect of this case is Clark & Funston's allegation that AMC/Jeep of Vero Beach, Inc. ("AMC/Jeep") breached a warranty in the sale of certain fixtures. Though Clark & Funston, Inc., was told that the fixtures were free and clear of all encumbrances, it turned out they were owned by other parties. AMC/Jeep conceded this issue on appeal and, therefore, we affirm that portion of the verdict ($6,000) relating to this claim.
Next, we consider Clark & Funston's allegation that AMC/Jeep materially breached the sale contract by failing to assign two leases for the property on which the dealership was located. The contract between Clark & Funston and AMC/Jeep specified that:
Seller [AMC/Jeep] shall assign or cause to be assigned to Buyer [Clark & Funston], effective at closing, the leases ... and Buyer agrees to assume a Seller's obligations thereunder. Buyer understands and acknowledges that this Agreement is contingent upon the assignment of the ... Leases described above and in the event that the Seller is unable to obtain the approval of the Buyer by ... [the lessors], then this Agreement shall be null and void and the Buyer and Seller shall be relieved of any and all obligations contained in this Agreement.
The trial court found that the leases had not been assigned and that the failure constituted a material breach of the contract. Though the analysis is not clear, it appears that the court relied upon this finding and legal conclusion to excuse Clark & Funston from performing any other obligations under the contract. Respectfully, we are compelled to disagree with the learned trial judge both as to the finding that no assignment had taken place and as to the conclusion that there was a material breach of the contract which damaged Clark & Funston.
While it is true that the lessors refused to release AMC/Jeep from liability under the lease agreements until the lessors had an adequate opportunity to observe Clark & Funston's performance record, it is also true that the lessors orally approved Clark & Funston stepping into AMC/Jeep's shoes. The evidence clearly demonstrates that the lessors were aware that Clark & Funston had taken possession of the premises and, furthermore, that the lessors accepted the monthly rental checks directly from Clark & Funston. This conduct, in our view, constituted an assignment by operation of law. The supporting principle of law was set forth in Farmers' Bank and Trust Co. v. Palms Publishing Co., 86 Fla. 371, 98 So. 143 (1923), where the court said:
That a lessor, by accepting the benefits of a lease, after an assignment or subletting by the original lessee, and by a course of conduct reasonably susceptible of a construction that he acquiesces in the assignment or subletting of the leased premises, notwithstanding a covenant against an assignment or subletting, may be held to have waived the covenant and to be estopped from asserting a forfeiture because of its breach, is well established. 98 So. at 144.
See also Crossman v. Fountainbleau Hotel, 273 F.2d 720 (5th Cir.1959); 51C C.J.S. Landlord and Tenant § 39 (1968); 49 Am.Jur.2d Landlord and Tenant § 397 (1970); *605 20 Fla.Jur. Landlord and Tenant § 62 (1958).
Moreover, even if we assume for the sake of argument that AMC/Jeep's conduct in failing to provide a written assignment of its rights under the leases constituted a breach of the contract, it would not support the $30,000 verdict in this case. While there is a legal remedy for every legal wrong and, thus, a cause of action exists for every breach of contract, an aggrieved party who has suffered no damage is only entitled to a judgment for nominal damages. J. Calamari & J. Perillo, The Laws of Contracts § 14-2 (2d ed. 1977). Clark & Funston has utterly failed to demonstrate that AMC/Jeep's conduct caused any damage.
Finally, we turn to Clark & Funston's claim that AMC/Jeep improperly refused to terminate a lien on the dealership's assets. This, says Clark & Funston, irreparably impaired its financial standing and forced it to close its doors. Without delving into the factual background of this charge, suffice it to say that the alleged injury is not borne out by the record. To the contrary, James A. Sheehan, the former president of the First National Bank of Fort Pierce, the bank which provided the dealership's floor-plan financing, unequivocally testified that irrespective of the filed security interest, his bank would not have provided additional financing. This is demonstrated by the following colloquy:
(Counsel) Q. Thinking back at that time when all these problems came up, was the floor plan going to be terminated?
(Mr. Sheehan) A. (Witness nods head affirmatively.)
Q. It was not going to be renewed?
A. No.
Q. If the financing statement was not there, if there was a clear record up there as to what Funston & Clark had represented to you as additional collateral, would the bank have been satisfied?
A. No. I don't think that we would have renewed the line in any event. (Tr. 177-178).
We are compelled to conclude that the record is devoid of substantial, competent evidence to support more than six thousand dollars of the thirty-six thousand dollar judgment. It is an undeniable fact that Clark & Funston operated the dealership for eight to ten months but was unable to make a go of the business. Whether this was a result of undercapitalization or management problems is not clear. But it is certain that Clark & Funston failed to prove that AMC/Jeep was responsible for the demise of the business. Only after Clark & Funston defaulted on various obligations for which AMC/Jeep was secondarily liable, did it institute the present suit. Given the lack of proof at trial, it is hard to suppress the suspicion that this was not a suit premised on the questionable legal rationale that the best defense is a good offense.
As a further indication of the deficiency of proof at trial, we turn to the trial court's imposition of personal liability upon AMC/Jeep's president and majority stockholder, Roy C. Chapin, III. In Florida, personal liability can only be imposed upon a corporate officer who has signed a contract in his personal capacity or who has used the corporate entity for fraudulent purposes or where the corporation was merely the alter ego of the shareholders. Charter Air Center, Inc. v. Miller, 348 So.2d 614 (Fla.2d DCA), cert. denied, 354 So.2d 983 (Fla. 1977); Riley v. Fatt, 42 So.2d 769 (Fla. 1950); 2 M. Gordon, Florida Corporations Manual, Ch. 13 (1975 (1980 Supp.)). In the instant case there was no evidence that Roy Chapin had personally involved himself in the details of the sale nor was there any allegation of fraud. On this basis, there can be no support for the contention that Chapin be held personally liable.
As a result of Clark & Funston's default on lease payments and on a bank loan which it had assumed, AMC/Jeep was required to pay out $19,597.00. Accordingly, AMC/Jeep counterclaimed for this sum in the trial court. The counterclaim, however, was denied apparently as a result of *606 the court's conclusion that AMC/Jeep materially breached the contract which, in turn, excused Clark & Funston's performance. In light of our reversal of the finding of a material breach, and since the testimony regarding AMC/Jeep's paying out $19,597.00 was uncontradicted at trial, we hold that AMC/Jeep is entitled to judgment in the amount claimed with credit to Clark & Funston for the six thousand dollars previously affirmed. Therefore, we affirm the judgment in part and reverse in part and remand the cause with instructions to enter judgment in favor of AMC/Jeep of Vero Beach, Inc. and against James E. Funston and Clark & Funston, Inc. in the sum of $13,597.00 plus court costs.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.
MOORE and BERANEK, JJ., concur.