**UNITED STATES of America, Plaintiff,**

**v.**

**F. Lee BAILEY, Defendant.**

**No. 601CV875ORL22KRS.**

United States District Court,
M.D. Florida.
Orlando Division.

Oct. 22, 2003.

Ralph J. Lee, U.S. Attorney's Office, Middle District of Florida, Jacksonville, FL, Anita M. Cream, U.S. Attorney's Office, Middle District of Florida, Orlando, FL, for United States of America, plaintiff.

Richard Lee Barrett, Barrett, Chapman & Ruta, P.A., Orlando, FL, F. Lee Bailey, Lynn, MA, for F. Lee Bailey, defendant.

**Order**

CONWAY, District Judge.

## I. INTRODUCTION

In this civil action brought by the Plaintiff, the United States of America, against the Defendant, F. Lee Bailey (hereinafter, "Bailey"), Bailey has filed a Motion for Reconsideration of the Court's Grant of Summary Judgment in Favor of the Government in its Order of January 24, 2003 (Doc. No. 82, filed April 29, 2003), and a Motion Under Rule 29(b) to Set Aside Punitive Damage Jury Verdict as Unwarranted by the Evidence, and the Circumstances of the Case (Doc. No. 84, filed April 29, 2003). The Plaintiff, the United States of America (hereinafter, "the United States" or "the Government"), responded (Doc. No. 93) on May 20, 2003. The motions were heard on June 18, 2003 (Doc. No. 96). The issue now before this Court is: can the relation back doctrine, a legal fiction created by federal statutory law,

satisfy the essential element of possession under Florida's tort of conversion and civil theft law.

## II. BACKGROUND

Following a Special Verdict of Forfeiture, forfeiting a $2 million fee (hereinafter, "the Legal Trust Fund") that the McCorkles transferred to Bailey for their legal defense in *USA v. McCorkle, et al*, Bailey filed a third-party petition claiming superior title in the Legal Trust Fund.[1] United States District Judge Patricia C. Fawsett treated Bailey's petition as a "claim" pursuant to 21 U.S.C. § 853(n)(6)(B). That section provides that if a court determines a petitioner has established by a preponderance of evidence that he is a "bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture ... the court shall amend the order of forfeiture in accordance with its determination."[2] Judge Fawsett referred the matter to Magistrate Judge James G. Glazebrook for a hearing and for issuance of a Report and Recommendation.[3]

From October 18–29, 1999, Judge Glazebrook conducted an evidentiary hearing on Bailey's claim to the Legal Trust Fund.[4] Thereafter, in a sixty-seven page Report and Recommendation (R & R), Judge Glazebrook found in favor of the Government, determining that Bailey failed to establish that he had a legal right, title, or interest in the Legal Trust Fund that rendered the forfeiture invalid.[5]

On June 29, 2000, Judge Fawsett adopted virtually all of Judge Glazebrook's R & R, ruling that pursuant to 21 U.S.C. § 853(c)[6], the Government "holds 'clear title' to the Fund, which is the 'property that is the subject of the order of forfeiture,' which 'relates back' to the date that the Fund was laundered in violation of 18 U.S.C. §§ 1956 & 1957."[7] However, Judge Fawsett found that since Bailey "caused the 'property that is the subject of the order of forfeiture' to be unavailable"[8] ... she did not have the power to order Bailey to "forfeit property other than the property which is expressly subject to forfeiture under sections 853(a), (c), and (p)."[9] Consequently, Judge Fawsett concluded that the Government "may do the following: (1) seek forfeiture of 'substitute assets' of the defendant; (2) seek forfeiture of property in the hands of a third party which is traceable to the forfeited party; and (3) pursue a civil action against

1. *See* Joint Pretrial Statement (Doc. No. 42) at 22.

2. 21 U.S.C. § 853(n)(6)(B).

3. *See* Complaint (Doc. No. 1), ¶ 50, at 18–19; *see also* Answer (Doc. No. 29), ¶ 50 at 9.

4. *See* Joint Pretrial Statement (Doc. No. 42) at 22.

5. *See* Complaint (Doc. No. 1), Ex. 1 at 61; *see also id.*, Ex. 2 at 46–47.

6. Title 21, United States Code, § 853(c) provides, in pertinent part, as follows:

   Third party transfers. All right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

7. Complaint (Doc. No. 1), Ex. 2 at 23.

8. *Id.* at 24.

9. *Id.* at 31–32 (footnote added).

the third party for the full amount of the funds transferred to him or her." [10]

On July 24, 2001, the Government filed the instant action against Bailey alleging causes of action for conversion (Count I) and civil theft (Count II).[11] The count alleging conversion included a claim for punitive damages.[12] The count alleging civil theft sought treble damages pursuant to Fla. Stat. § 772.11(1).[13]

In order to establish a claim for conversion of money under Florida law, a plaintiff must demonstrate, by a preponderance of the evidence: (1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so. *See Navid v. Uiterwyk Corp.,* 130 B.R. 594, 595–596 (M.D.Fla.1991); *see also Challa v. Challa (In re Challa),* 186 B.R. 750, 759 (Bankr.M.D.Fla.1995). Neither knowledge nor intent are required. *In re Challa,* 186 B.R. 750, 759 ("Additionally, courts have found that 'neither knowledge nor intent' is required to maintain an action for conversion"); *Navid,* 130 B.R. 594, 596 (accord); *Florida Farm Bureau Casualty Ins. Co. v. Patterson,* 611 So.2d 558, 559 (Fla. 1st DCA 1992) (accord); *Eagle v. Benefield–Chappell, Inc.,* 476 So.2d 716, 718 (Fla. 4th DCA 1985) ("Liability for conversion does not require proof of knowledge or intent to deprive one of his property"); *but see Small Bus. Admin.,* 864 F.Supp. 1254, 1262 (holding that conversion requires possession in conjunction with a present intent to deprive a person entitled to possession of their property). In other words, "[t]he tort may be established despite evidence that the defendant took or retained property based upon the mistaken belief that he had a right to possession." *Seymour v. Adams,* 638 So.2d 1044, 1047 (Fla. 5th DCA 1994); *City of Cars, Inc. v. Simms,* 526 So.2d 119, 120 (Fla. 5th DCA), *rev. denied,* 534 So.2d 401 (Fla.1988) ("Any act of a person in asserting a right of dominion over a chattel which is inconsistent with the right of the owner and deprives the owner of the right of possession to which the owner is entitled may constitute a conversion, whether the act is accomplished with, or without, any specific wrongful mental intent"). Evidence of wrongful intent need only be established where punitive damages are sought in connection with the tort. *See*

10. *Id.* at 32. On February 18, 2003, Judge Fawsett's findings of fact and legal conclusions were affirmed in *United States v. McCorkle,* 321 F.3d 1292 (11th Cir.2003). There, the Eleventh Circuit concluded that Bailey was not a bona fide purchaser for value with respect to the Legal Trust Fund because "[i]t is clear that the McCorkles used ... $2 million in laundered, and therefore forfeitable, funds to create the trust fund for payment of attorney's fees [and][i]t is also clear that Bailey knew from the outset that the funds were subject to forfeiture." *Id.* at 1296. Inasmuch as that determination established the Government's clear title to the Legal Trust Fund, the Court of Appeals intimated that the Government could sue Bailey for conversion. *See id.* at 1294 ("To defeat the Government's right to such proceeds—that is, to avoid being sued by the Government for conversion of its property—Bailey had to file a petition with the district court and prove that he had received the money as a bona fide purchaser for value without cause to believe that the money was subject to forfeiture") (internal citation omitted); *id.* at 1295 ("the final determination that the Government (and not Bailey) had clear title to the trust fund assets enabled the Government to pursue a common law action against Bailey for conversion"); *id.* at 1296 n. 5 ("to reach a third-party transferee's substitute assets, the Government is left to a common law action for conversion; the criminal proceeding cannot be used to recover the forfeited interests").

11. *See generally* Complaint (Doc. No. 1).

12. *See id.* at 24.

13. *See id.*

*Ciamar Marcy, Inc. v. Monteiro Da Costa,* 508 So.2d 1282, 1283–1284 (Fla. 3rd DCA 1987); *see also Sporting Goods Distribs. v. Whitney,* 498 F.Supp. 1088, 1092 (N.D.Fla. 1980) (holding that punitive damages are appropriate on a conversion claim "where the circumstances surrounding the conversion are such to show fraud, actual malice, deliberate violence, or oppression, or such gross negligence as to indicate a wanton disregard of the rights of others") (internal citations and quotations omitted); *Foley v. Dick,* 436 So.2d 139, 141 (Fla. 2nd DCA 1983) (accord).

In order to establish a claim of civil theft, a plaintiff must demonstrate, by clear and convincing evidence, that the defendant knowingly obtained or used the plaintiff's property with the intent to, either temporarily or permanently deprive the plaintiff of a right to the property or a benefit therefrom, or alternatively, with the intent to appropriate the property to his own use or to the use of any person not entitled thereto. *See Anthony Distribs., Inc. v. Miller Brewing Co.,* 941 F.Supp. 1567, 1575 (M.D.Fla.1996); *Florida Standard Jury Instructions,* 720 So.2d 1077, 1078 (Fla.1998). Upon such a showing, a plaintiff is entitled to threefold the actual damages sustained in addition to reasonable attorney's fees and court costs in the trial and appellate courts. *See* Fla. Stat. § 772.11(1).

Although Bailey received only $777,545.71 from the Legal Trust Fund (the remainder—$1,222,454.29—went to other lawyers on the McCorkle defense team), the Government's action for conversion and civil theft sought the entire $2,000,000 from Bailey.[14]

On July 29, 2002, the Government moved for summary judgment on both counts.[15] That motion was granted, in part, after this Court found as a matter of law that "the Government has demonstrated that it had a right to possess the money in the Legal Trust Fund at the time it was wrongfully converted by Bailey."[16]

In reaching that conclusion, this Court declared Judge Fawsett's application of the relation back doctrine codified in 21 U.S.C. § 853(c) to be law of the case.[17] On that subject, the Court stated:

> [U]nder Florida law, a necessary element of common law conversion is that the plaintiff must have had a present or immediate right to possession of the allegedly converted property at the time of the conversion ... Pursuant to law of the case, Judge Fawsett's application of the relation back doctrine codified in § 853(c) requires a finding that the Government had a right to possess the Legal Trust Fund at the time of the conversion. In other words, although the Government did not actually have a present or immediate right to possession of the Legal Trust Fund at the time of the suspect withdrawals, the relation back doctrine necessarily establishes this element since tainted assets vest in the Government at the time of the criminal act. No provision of the [Comprehensive Forfeiture Act] suggests that § 853(c) cannot be relied upon to establish one element of a conversion action.[18]

Ultimately, this Court's summary judgment order adjudicated Bailey liable to the Government for converting the entire contents of the Legal Trust Fund.[19] Excepting

14. *See id.*

15. *See generally* Doc. No. 33.

16. Doc. No. 45 at 36

17. *See id.* at 32–33.

18. *Id.* at 36–37 (internal citations and quotations omitted).

19. *See id.* at 37–38.

those issues relating to Bailey's intent with respect to the punitive damage and civil theft claims, the Court determined that the elements of the Government's actions were satisfied.[20] In that connection, the Court remarked as follows:

> The common law conversion claim will proceed only on the Government's request for punitive damages. In order to obtain punitive damages for Bailey's conversion, the Government must make a showing of fraud, actual malice, deliberate violence, or oppression, or such gross negligence on the part of Bailey as to indicate a wanton disregard of the Government's right to the Legal Trust Fund.[21]
>
> * * * * * *
>
> The civil theft claim pursuant to Fla. Stat. § 772 will proceed only on the issue of Bailey's intent. In order to recover under this statute, the Government must show that Bailey knowingly obtained the contents of the Legal Trust Fund or knowingly endeavored to obtain the contents of the Legal Trust Fund with the felonious intent to commit a theft.[22]

On March 24, 2003, the undersigned judge presided over a jury trial on the remaining issues in the Government's case.[23] After four days of proceedings, a jury returned a verdict against Bailey.[24] On the punitive damages claim, the jury awarded the Government $3,000,000 after finding that Bailey obtained the Legal Trust Fund with fraud, actual malice, deliberate violence, or oppression, or such gross negligence as to indicate a wanton disregard of the Government's right to possession.[25] Addition of the $2,000,000 previously assessed against Bailey on summary judgment brought the Government's damages to $5,000,000 on the conversion claim. Concerning the civil theft claim, the jury found that Bailey obtained the contents of the Legal Trust Fund with the felonious intent to commit a theft, thereby justifying a trebling of the Government's $2,000,000 in actual damages for a total of $6,000,000.[26]

Against that backdrop, Bailey now moves this Court to reconsider its grant of summary judgment in favor of the Government on its conversion claim and part of its civil theft claim.[27] In that regard, Bailey argues that it was error for this Court to find that the United States had a present or immediate right to possess the Legal Trust Fund pursuant to the relation back doctrine codified in 21 U.S.C. § 853(c).[28] In addition, Bailey moves this Court to set aside the punitive damages award as unwarranted by the evidence and the circumstances of the case.[29]

## III. THE PARTIES' ARGUMENTS

In his motion for reconsideration, Bailey argues that this Court improperly applied the relation back doctrine to satisfy the elements of the Government's claims because "it is clear that this retroactive vesting is based upon a legal fiction[,]" [30] and permitting a legal fiction to establish the

**20.** *See id.*, ¶¶ 3–4 at 55.

**21.** *Id.*, ¶ 3 at 55.

**22.** *Id.*, ¶ 4 at 55.

**23.** *See generally* Docs. No. 65, 68–70.

**24.** *See generally* Verdict Form (Doc. No. 71).

**25.** *Id.* at 1.

**26.** *See id.* at 2.

**27.** *See generally* Doc. No. 82.

**28.** *See* Doc. No. 85 at 12–13.

**29.** *See generally* Doc. No. 84.

**30.** Doc. No. 85 at 12 (internal citations omitted).

Government's present or immediate right to possession "flies in the face of logic." [31] According to Bailey, the Government does not gain title in forfeited property until there is a decree of forfeiture; if "legal title to the property actually vested in the United States at the time of the illegal act, judicial forfeiture proceedings would never be 'necessary.'" [32]

In response, the Government asserts that Bailey's arguments are nonsensical inasmuch as they are based upon the "notion that the existence of the right to possess an otherwise possessory interest flowing from legal title does not exist at all until such time as that right has been enforced to judgment (or, presumably, by such power or persuasion as otherwise elicits consent)." [33] According to the Government, if such were the case, "then all conversion actions would fail for having become moot once the converting tortfeasor alienated the very property subject to the possessory interest of the tort victim; and, such mootness would have the absurd result of allowing the offending tortfeasor to escape liability through such alienation while relegating the tort victim to pursuit of the converted property to potentially numerous parties, known or unknown." [34]

## IV. STANDARD OF REVIEW

When evaluating a motion to reconsider, a court should proceed cautiously, realizing that "in the interests of finality and conservation of scarce judicial resources, reconsideration of a previous order is an extraordinary remedy to be employed sparingly." *Lamar Adver. of Mobile, Inc. v. City of Lakeland,* 189 F.R.D. 480, 489 (M.D.Fla.1999) (internal citations and quotations omitted).

The decision whether to grant or deny a motion to reconsider "is committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion" *See Am. Home Assurance Co. v. Glenn Estess & Assoc., Inc.,* 763 F.2d 1237, 1238–39 (11th Cir.1985) (internal citations omitted).

## V. LEGAL ANALYSIS

### A. THE PRIOR SUMMARY JUDGMENT RULING

In this Court's January 24, 2003 summary judgment order (Doc. No. 45), the undersigned judge—relying on the Fourth Circuit's decision in *United States v. Moffitt, Zwerling & Kemler, P.C.,* 83 F.3d 660, 670 (4th Cir.1996), *cert. denied,* 519 U.S. 1101, 117 S.Ct. 788, 136 L.Ed.2d 730 (1997) [35]—determined that the relation

31. *Id.* at 13.

32. *Id.* (quoting *United States v. 92 Buena Vista Ave.,* 507 U.S. 111, 125, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993) (Scalia, J. concurring)).

33. Doc. No. 93 at 6.

34. *Id.*

35. In *United States v. Moffitt, Zwerling & Kemler, P.C.,* 875 F.Supp. 1190 (E.D.Va. 1995), the United States District Court for the Eastern District of Virginia considered a forfeiture dispute similar to the one presented here.

There, in August of 1991, William Paul Covington—who was under investigation for cocaine distribution—paid $103,800 in tainted cash to the law firm of Moffitt, Zwerling & Kemler, P.C. *See id.* at 1194. Subsequently, on October 30, 1991, Covington was indicted on drug trafficking, firearms, and money laundering charges. *See id.* The indictment included a broad forfeiture count including all of Covington's property derived from criminal activity. *See id.*

On September 25, 1992, Covington entered a guilty plea to the charges contained in the indictment. *See id.* Thereafter, the Court ordered the forfeiture—pursuant to 21 U.S.C. § 853—of all property constituting the proceeds of Covington's drug trafficking including the $103,800 fee that Covington transferred to the law firm. *See id.* at 1194–95. Although the law firm filed a third-party petition claiming that it was a bona fide purchaser for value, the district court concluded that the firm was reasonably without cause to be-

back doctrine satisfied the immediate possession element of the Government's conversion and civil theft claims. *See* Doc. No. 45 at 36–37 and 42. Upon further reflection and legal study, however, the Court finds that this determination was erroneous.

At the time of the alleged conversion, the Government had neither a present nor immediate right to possess the Legal Trust Fund. On the contrary, its possessory interest was dependent on future events. Specifically, it was contingent upon: (1) the conviction of the McCorkles; (2) rendition of a special verdict of forfeiture; and (3) entry of a favorable judgment against asserted bonafide purchasers for value. Such a speculative interest is too attenuated to maintain the possessory action of conversion or civil theft, and case law indicates that the relation back doctrine cannot remedy that deficiency.

"Deemed" possession pursuant to the legal fiction of relation back is the antithe-

lieve that the $103,800 fee was subject to forfeiture *See id.* at 1995.

On October 21, 1994, the Government sued the law firm for conversion in accordance with Virginia law. *See id.* As in Florida, Virginia requires a plaintiff to prove that he or she had possession or an immediate right to possession of the subject property at the time of the conversion. *See id.* at 1198–99. Citing the relation back doctrine, the district court found that the Government satisfied that element:

> The statutory language [of the Comprehensive Forfeiture Act] supports the government's view. The statute simply provides for retroactive title, and does not limit the purposes for which the title is effective ... In sum, there is no indication in § 853 that the United States' retroactive title does not apply in the context of a conversion action. The statute's plain language compels the conclusion that it does.
>
> * * * * * *
>
> While the idea of a lawful transaction retroactively becoming a wrongful taking is counterintuitive, the relation back rule is a legal fiction whose effect is counterintuitive in every instance. In sum, the statutory language and prior cases establish the general rule that the government's title under § 853(c) is to have a retroactive effect, and that general rule is applicable here. As a result, the government, in retrospect, had title to, and a right to immediate possession of, the $103,800 in August 1991, the time of the alleged conversion.

*Id.* at 1200–02 (internal citations and quotations omitted).

In the alternative, the district court found that the Government satisfied the immediate possession element through 21 U.S.C. § 881(b)(4), which allows the Government to seize property without a warrant or through judicial process when "the Attorney General has probable cause to believe that the property is subject to civil forfeiture." *See id.* at 1202. Although the Government did not actually exercise its right to seize the $103,800 under § 881(b), the court determined that the Government's ability to do so was the equivalent of possession or an immediate right to possession:

> [T]he government had an absolute and unconditional right to immediate seizure and possession of the $103,000 in August 1991 pursuant to § 881(b), even though its right to maintain possession was contingent on its success in a subsequent forfeiture proceeding.

*Id.* at 1203.

On appeal, the Fourth Circuit Court of Appeals affirmed the district court's legal conclusions, stating:

> Under the relation back doctrine codified in § 853(c), the government had the right to possess the $103,800 at the time the law firm received it in August, 1991. 21 U.S.C. § 853(c). No provision of the CFA suggests that § 853(c) cannot be relied upon to establish one element of a conversion action. Moffitt, Zwerling emphasizes, however, that the government did not actually gain title to the $103,800 until the entry of the forfeiture order. But once the forfeiture order was entered, the government's title dated back in time to the criminal activity giving rise to the forfeiture, a date which necessarily was prior to August, 1991. *See United States v. 92 Buena Vista Avenue,* 507 U.S. 111, 125–27, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993). The government therefore had a right to possess the $103,800 in August, 1991.

*United States v. Moffitt, Zwerling & Kemler, P.C.,* 83 F.3d 660, 670 (4th Cir.1996).

sis of immediate possession. Accordingly, it is improvident to apply the doctrine to transform Bailey's once rightful possession of the Legal Trust Fund into a tortious act of interference with Government property. Since the Government had no possessory interest until the decree of forfeiture, the relation back doctrine cannot support the punishing money award entered against Mr. Bailey.[36]

## B. THE LAW OF CONVERSION

### 1. Generally

The modern tort of conversion arose out of the venerable common law action of trover. *See* Restatement (Second) of Torts § 222 cmt. a (1965); W. Page Keeton et. al., Prosser and Keeton on the Law of Torts § 15 at 89 (5th ed. 1984) ("Although the term had made some earlier appearances, conversion had its real genesis in the old common law action of trover"); *Freeman v. Corbin (In re Estate of Corbin),* 391 So.2d 731, 733 n. 1 (Fla. 3rd DCA 1980) ("conversion evolved from the common law action of trover") (internal citation omitted); *Belford Trucking Co. v. Zagar,* 243 So.2d 646, 648 (Fla. 4th DCA 1970) ("The modern action of conversion arose out of the common law action of trover"). Trover afforded an owner a remedy against a finder of lost goods who refused to return the goods, instead converting them to his or her own use. *See* Restatement (Second) of Torts § 222 cmt. a (1965); *see also Belford Trucking Co., Inc.,* 243 So.2d at 648. Through the use of the fiction of losing and finding trover was extended into other areas of law. *See* Restatement (Second) of Torts § 222 cmt. a (1965); *see also Belford Trucking Co.,* 243 So.2d at 648. In time, however, it was supplanted by the tort of conversion: the wrongful exercise of dominion or control over property to the detriment of the rights of one entitled to possession. *Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead,* 162 F.3d 1101, 1108 (11th Cir.1998) (applying Florida law).

### 2. The Right to Possession

#### a. Future Possessory Interests are Insufficient to Maintain a Conversion Action in Florida

At the common law, conversion actions were strictly limited; only plaintiffs capable of establishing either a present or immediate right of possession in the disputed res at the time of the taking could maintain the action. Under the modern version of the tort, however, conversion has been extended to protect future possessory interests.[37] Thus, "[o]ne who is

36. In reaching this conclusion, the Court recognizes that both Judge Fawsett and the Eleventh Circuit Court of Appeals intimated that the Government, on these facts, could proceed with a cause of action for conversion. *See United States v. McCorkle,* 321 F.3d 1292 (11th Cir.2003). However, neither Judge Fawsett nor the Court of Appeals ever indicated that the relation back doctrine ipso facto satisfies the elements of conversion, nor did they analyze Florida law with respect to the elements of conversion.

37. The common law rule was extended to permit recovery by one who had the immediate right to possession ... But an owner who had neither possession nor the immediate right to it at the time of the conversion could not maintain trover. The owner's remedy was an action on the case for the damage to his interest in the goods. Although this distinction persists today in a good many courts, it is an antique procedural surviv[or], with nothing to recommend it. The important fact is that the person entitled only to future possession can recover, in whatever form of action, the full value of his interest in the goods which has been appropriated by the defendant, and no more. If this is not to be called conversion, it is at least the same thing by another name. There are a substantial number of courts which have discarded the procedural distinction, and have called the action one of conversion.

W. Page Keeton et. al., Prosser and Keeton on the Law of Torts § 15 at 104–05 (5th

subject to liability for conversion to a person in possession of a chattel, or to one entitled to its immediate possession, is also subject to liability to a person entitled to the future possession of the chattel ..." Restatement (Second) of Torts § 243 cmt. b (1965); *see also Harley–Davidson Motor Co., Inc. v. Bank of New England–Old Colony, N.A.*, 897 F.2d 611, 617 (1st Cir. 1990) (applying Rhode Island law and holding that "in order to bring a conversion action, plaintiff, at the time of conversion, must have been either in possession, or entitled to present or future possession") (internal citations omitted); *Weizmann Inst. of Sci. v. Neschis,* 229 F.Supp.2d 234, 253 (S.D.N.Y.2002) (applying New York law and holding that "Plaintiffs have adequately ple[ ]d a conversion claim premised upon their future interest"); *Ostrow v. Alaska,* 963 P.2d 1021, 1025 (Alaska 1998) ("To maintain a cause of action for conversion the plaintiff must establish that [she] had a certain possessory interest in the chattel at the time of the wrongful act ... The possessory interest can be the right to immediate possession or the right to future possession of the chattel ...") (internal citations and quotations omitted); *Carney v. Gebhardt,* 766 P.2d 1287 (Kan.1988) ("Under the facts of this case, the plaintiffs, based upon their ... future right to possession of the deed ... could have brought an action against defendant ... for conversion of the deed"); *Langham v. Kolde,* 116 Wash.App. 1067, 2003 WL 21055463, * 4 (Wash.Ct.App. 2003) ("To maintain a conversion action, a plaintiff need only establish some property interest in the goods allegedly converted, and does not need to be in possession or have the immediate right to possess the property") (internal citation omitted); *Dufault v. Dufault,* 1992 Mass.App.Div. 54, 55, 1992 WL 64134 (1992) ("If the withdrawal of the funds was done without ... permission ... then the withdrawal interfered with the plaintiff's future right of possession. The plaintiff has standing to bring an action for the tort of conversion"); *Int'l Bus. Machs. Corp. v. Comdisco, Inc.,* 1993 WL 259102, *3 (Del.Super.Ct.1993) 1993 Del Super. Lexis 183, *9 ("At one time, conversion would not lie absent a showing of a right of possession or immediate possession, but today 'conversion' is used by many courts to describe an interference with the rights of one who is not in possession of the chattel, and who has no right to immediate possession, but has only a right of future possession") (internal citation and quotations omitted).

The modern version of conversion subjects a tortfeasor to the following liabilities:

(1) to the possessor, liability for the entire value of the chattel in addition to any special damages resulting from the conversion, and this liability does not depend on the existence of the possessor's responsibility to the owner for the loss of the chattel;

(2) to the bailor at will or other person entitled to immediate possession of the chattel, liability for its full value; [and]

(3) to the person entitled to the chattel at some future time, liability for the damage that such person can prove he has sustained as a result of the loss of the chattel, which ordinarily will be its full value less the value of the chattel's use until the plaintiff's right to possession has accrued.

Harper & James, The Law of Torts § 2:8 at 2:34–2:35 (3rd ed.1996).

While the modern view now prevails in the United States, this Court's research reflects that a substantial minority of courts continue to follow the traditional

ed.1984); *see also* Restatement (Second) of Torts § 243 cmt. b (1965).

common law rule: that future possession is insufficient to maintain an action for conversion. In that connection, the Utah Supreme Court has stated:

> Utah follows orthodox criteria in applying the doctrine of conversion...The general rule is that an action for conversion is not maintainable unless the plaintiff, at the time of the alleged conversion, is entitled to immediate possession of the property. An interest in property which does not carry with it a right to possession is not sufficient; *the right to maintain the action may not be based upon a right to possession at a future time.*

*Benton v. Utah Div. of State Lands and Forestry,* 709 P.2d 362, 365 (Utah 1985) (internal citations and quotations omitted) (emphasis in the original); *see also Fitzsimons v. Frey,* 153 Neb. 550, 45 N.W.2d 603, 605 (1951) (holding that a conversion action "may not be based upon a right to possession at a future time") (internal citation and quotations omitted); *Del E. Webb Corp. v. Structural Materials Co.,* 123 Cal. App.3d 593, 176 Cal.Rptr. 824, 833 (1981) (holding that an entitlement to future possession is insufficient to maintain an action for conversion).

Like Utah, the State of Florida follows orthodox criteria in applying the doctrine of conversion. To maintain the action, a plaintiff must establish possession or an immediate right to possession in the property at the time of the conversion. *See Scherer v. Laborers' Intern. Union of N. Am.,* 746 F.Supp. 73, 84 (N.D.Fla.1988) ("In order to maintain an action for conversion, one must have possession of the property or an immediate right to possession") (internal citations omitted); *Nat'l Ventures, Inc. v. Water Glades 300 Condo. Assoc.,* 847 So.2d 1070, 1073 (Fla. 4th DCA 2003) ("For a conversion the actor is subject to liability to one who *at the time* was entitled to immediate possession of the chattel") (internal citation omitted) (emphasis added); *Ginsberg v. Lennar Fla. Holdings, Inc.,* 645 So.2d 490, 499 (Fla. 3rd DCA 1994), *rev. denied,* 659 So.2d 272 (Fla.1995) ("In order to maintain an action for conversion, one must have possession of the property or an immediate right to possession") (internal citations omitted); *Page v. Matthews,* 386 So.2d 815, 816 (Fla. 5th DCA 1980) ("In Florida, an action for conversion is regarded as a possessory action and the plaintiff must have a present or immediate right of possession of the property in question") (internal citations omitted); *Allen v. Universal C.I.T. Credit Corp.,* 133 So.2d 442, 445 (Fla. 1st DCA 1961) ("In this state an action for conversion is regarded as a possessory action, and the plaintiff, in order to maintain this action, must have a present or immediate right of possession of the property in question") (internal citations omitted); *Dekle v. Calhoun,* 60 Fla. 53, 53 So. 14, 15 (1910) ("No right in the property other than a mere statutory lien without immediate right of possession is shown by the plaintiff and he cannot on that right alone maintain this action for conversion"); *see also* 12 Fla. Jur.2d, Conversion and Replevin § 19 (2003) ("In order to maintain an action for conversion, one must have possession of the property or an immediate right to possession") (internal citations omitted); Restatement (Second) of Torts § 225 (1965) ("For a conversion the actor is subject to liability to one who at the time was entitled to immediate possession of the chattel"). Similarly, in order to maintain an action for civil theft, a plaintiff must establish a present or immediate right to possession at the time of the theft. *Capital Factors, Inc. v. Homeline Corp. (In re Gen. Plastics Corp.),* 158 B.R. 258, 287 (Bankr.S.D.Fla.1993) ("a necessary element of both common law conversion and statutory civil theft is that the plaintiff must have had a present or immediate right to possession of the allegedly con-

verted property at the time of the conversion") (internal citations and quotations omitted); *Citation Mortgage. Ltd. v. RC of a Retirement Living, Ltd.*, 753 So.2d 777, 779 (Fla. 5th DCA), *rev. denied,* 773 So.2d 54 (Fla.2000) (accord): *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So.2d 490, 497–501 (Fla. 3d DCA 1994) (accord); *Alex Hofrichter, P.A. v. Zuckerman & Venditti, P.A.*, 710 So.2d 127, 129–30 (Fla. 3rd DCA), *rev. denied,* 728 So.2d 206 (Fla. 1998) (accord). Future possession is insufficient.

In this instance, the Government's conversion and civil theft claims are based upon a future possessory interest; notwithstanding any application of the relation back doctrine, the Government lacked a cognizable interest in the Legal Trust Fund at the time of the alleged conversion. Its interest came to fruition only when the Special Verdict of Forfeiture was entered. *See United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 135, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993) ("It is clear from these [forfeiture] procedures that the Government does not gain title to the property until there is a decree of forfeiture") (Scalia, J. concurring). After all, "[i]f ... legal title actually vested in the United States at the time of the illegal act, judicial forfeiture proceedings would never be 'necessary.'" *Id.* For this reason, the United States is incapable of maintaining causes of action for conversion and civil theft; its asserted possessory interest, which is based solely on the relation back doctrine, is insufficient.

The Ninth Circuit Court of Appeals' decision in *CHoPP Computer Corp. v. United States,* 5 F.3d 1344 (9th Cir.1993), *cert. denied,* 513 U.S. 811, 115 S.Ct. 63, 130 L.Ed.2d 20 (1994), is instructive on this point. In that case, the plaintiff, Chopp Computer Corp. (hereinafter, "Chopp"), obtained a preliminary injunction prohibiting an investment promoter from withdrawing or transferring any proceeds (hereinafter, "the tainted proceeds") derived from the short sale of Chopp stock. *See id.* at 1345. Subsequently, Chopp won a civil judgment and obtained a constructive trust over the tainted proceeds. *See id.* at 1346. In the meantime, however, the defendant, the United States, obtained a judgment against the investment promoter allowing the Government to seize the investment promoter's bank accounts containing the tainted proceeds. *See id.* at 1345–46. It was undisputed that at the time of the seizure, the United States had knowledge of the preliminary injunction. *See id.*

On the authority of its civil judgment, Chopp brought an action for conversion against the United States. *See id.* at 1346. To the extent that California law requires a plaintiff to prove possession at the time of the conversion, Chopp relied on case law that a constructive trust springs into existence at the moment of a wrongful taking. *See id.* at 1348.

Finding the concept of retroactive vesting inapposite in the context of a conversion, the Ninth Circuit held that Chopp could not maintain its action against the United States. *See id.* at 1348–51. The court of appeals explained:

> We [reject] Chopp's contention that the constructive trust vested title retroactively, at least in a manner that would render tortious prior levies by judgment creditors. Chopp is simply not in the position of a plaintiff who seeks a return of an identifiable res wrongfully taken or wrongfully retained ...
>
> Chopp bears the burden of persuading us that it may bring this action. In a conversion, a plaintiff must recover, if at all, upon the strength of its own title and not upon the weakness of his adversary ... The constructive trust, once imposed undoubtedly gave Chopp some kind of

an equitable interest in the [tainted proceeds] ... but that interest was recognized after the government had made a perfectly lawful levy on the ... [tainted proceeds]. Chopp's late-perfected interest is too weak to overcome the ... possessory interest of the United States, lawfully acquired... We are unpersuaded that California courts would sanction that result.

*Id.* at 1350 (internal citations and quotations omitted).

As in *CHoPP,* the Defendant here rightfully acquired possession of the disputed res notwithstanding his knowledge of a third party's potential interest therein; there was no flaw in Bailey's title when he acquired the Legal Trust Fund. Similarly, as in *CHoPP,* the Plaintiff's interest here arose too late to affect the rights and obligations of the parties on the date of the alleged conversion. Accordingly, following *CHoPP,* this Court finds that the United States' late perfected interest is too attenuated to vitiate Bailey's lawful acquisition and disbursement of the Legal Trust Fund. At the time Bailey committed these acts, the United States was not in the position of a plaintiff who sought the return of an identifiable res wrongfully taken or wrongfully retained. For that reason, the concept of retroactive vesting cannot transform Bailey's rightful possession of the Legal Trust Fund into a tortious act of interference with Government property under Florida law.

**b. Contingent Interests Are Insufficient to Support a Conversion Action in Florida**

In addition to the problems associated with converting future interests, the Government's claims are also fatally flawed because at the time of the alleged conversion, the Government's possessory right was not determinate. Instead, it was contingent upon a conviction of the McCorkles, a special verdict of forfeiture, and a favorable outcome against asserted bona-fide purchasers for value. While many courts have extended conversion to cover vested future interests, few, if any, have countenanced conversion actions based upon the mere possibility of future possession. *See, e.g., Cirrincione v. Johnson,* 184 Ill.2d 109, 234 Ill.Dec. 455, 703 N.E.2d 67, 70 (1998) ("To prove conversion, a plaintiff must establish that ... he has an absolute and unconditional right to the immediate possession of the property") (internal citation omitted); *Heflin & Phillips v. Slay,* 78 Ala. 180, 183 (1884) ("To support the action of trover, the plaintiff must have ... actual or constructive possession, or the right to immediate possession at the time of the conversion ... The right to possession in the future, whether determinate, or contingent on the happening of some event, or the default or omission of another in possession, is not sufficient"); *Gilbert v. Rafael,* 181 Ga.App. 460, 352 S.E.2d 641 (1987) (holding that right to immediate possession must be absolute and unconditional).

In *United States v. Loughrey,* 172 U.S. 206, 216, 19 S.Ct. 153, 43 L.Ed. 420 (1898)[38], for example, the United States Supreme Court dismissed a conversion action on the grounds that the plaintiff's possessory interest—the possibility of a reversion—was too attenuated to maintain an action in trover. There, the United States deeded federal land to the State of Michigan subject to a condition subsequent that if a railroad should not be completed in ten years the land should revert back to the United States. *See id.* at 209, 19 S.Ct. 153. Subsequently, trespassers entered onto the land, cut and removed timber, and

38. Because conversion is an ancient tort that has remained relatively unchanged since its inception, many of the cases cited in this order were decided quite some time ago.

wrongfully converted it to their own use. *See id.* The United States then brought an action in trover but its case was dismissed on account of its diluted possessory interest. *See id.* In that regard, the United States Supreme Court held: "[t]he fact is that nothing remained of the original title of the United States but the possibility of a reversion, a contingent remainder, which would be insufficient basis for an action of trover... To sustain this action there must be an immediate right of possession when the timber is cut." *Id.* at 216, 19 S.Ct. 153 (internal citations omitted). Observing that only the State of Michigan could maintain an action in trover, the Supreme Court further opined that a "plaintiff is bound to prove a right to possession in himself at the time of the conversion, and if the goods are shown to be in the lawful possession of another ... he cannot maintain trover for them." *Id.* at 212, 19 S.Ct. 153 (internal citations omitted).

"Florida decisions seem to be in harmony with the view taken by the ... Supreme Court." *Joseph Dixon Crucible Co. v. Paul,* 167 F. 784, 788 (5th Cir.1909) (quoting *Loughrey,* 172 U.S. at 212, 19 S.Ct. 153).[39] In *Ginsberg v. Lennar Fla. Holdings, Inc.,* 645 So.2d 490 (Fla. 3d DCA 1994), for instance, Florida's Third District Court of Appeal dismissed a conversion and civil theft action on account of the conditional nature of the plaintiff's possessory interest.

There, Lennar Florida Holdings, Inc. (hereinafter, "Lennar") held two mortgages on apartment complexes operated by Ginsberg. *See id.* at 492. Each mortgage gave Lennar a right to the rents upon default. *See id.* However, when the mortgages went into default, Ginsberg allegedly diverted the rents to his personal use. *See id.* As a result, Lennar filed suit alleging, *inter alia,* conversion and civil theft. *See id.* at 492–93. Both of Lennar's claims were based on Fla. Stat. § 697.07, which governs the steps a mortgagee must take in order to enforce an assignment of rents. In relevant part, that statute provides:

> (1) A mortgage or separate instrument may provide for an assignment of rents of real property or any interests therein as security for payment of an indebtedness.
>
> (2) If such assignment is made, the mortgagee shall hold a lien on the rents, and the lien created by the assignment shall be perfected and effective against third parties upon recordation of the mortgage or separate instrument in the public records in the county in which the real property is located, according to law.
>
> (3) Unless otherwise agreed to in writing by the mortgagee and mortgagor, the assignment of rents shall be enforceable upon the mortgagor's default and written demand for the rents made by the mortgagee to the mortgagor, whereupon the mortgagor shall turn over all rents in the possession of the mortgagor at the time of the written demand or collected thereafter (the "collected rents") to the mortgagee less payments of any expenses authorized by the mortgagee in writing.

Fla. Stat. § 697.07. According to Lennar, § 697.07 afforded it an automatic right to the rents upon default thereby satisfying the immediate possession element of its conversion and civil theft actions. *See id.* at 497–98.

Acknowledging that Lennar's right to possession was dependent upon affirmative

39. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

steps—specifically an action to foreclose on the rent—the court of appeals dismissed Lennar's conversion action as untenable. *Id.* at 499. In that connection, the appellate court stated:

> Assuming ... that a proper demand had been made ... Lennar, at best, under the statute, only held a lien on the rents. In order to reduce that lien to possession Lennar was required to foreclose on the lien ... thus, it cannot claim, under the statute, a right to possession of the rents.
>
> * * * * * *
>
> Under the loan documents Lennar had many remedies[,] none of which automatically vested upon default. Although Lennar had the right to take possession of the properties; accelerate the debt; operate the property; collect and possess rents; and generally every right[ ] of action and remedy available under applicable law, these rights, by their terms, required some affirmative act by Lennar prior to their becoming vested... It cannot be said ... that Lennar has ... an immediate right to possession of the rents under the loan documents[.]

*Id.* at 498–99 (internal citations omitted); *see also Citation Mortgage, Ltd. v. RC of a Retirement Living, Ltd., Series III,* 753 So.2d 777, 779 (Fla. 5th DCA), *rev. denied,* 773 So.2d 54 (Fla.2000) (accord).

With respect to the civil theft claim, the Third District reached a similar conclusion:

> In Count III Lennar alleges civil theft. As stated above, Lennar has failed to allege a possessory interest in the rents. Since Lennar has not stated a right to possession of the rents Lennar may not state a cause of action for civil theft of those rents. Civil theft requires that one knowingly obtain or use the property of another. Simply put[,] the rents were not Lennar's and Lennar may not complain that they have been stolen from them.
>
> Furthermore, Lennar may not, as a matter of law under these facts, plead an intent to commit theft. Since Lennar has failed to plead a possessory interest in the rents the natural inference is that the rents were properly in the possession of Ginsberg ... Ginsberg ... [was] rightfully in possession of the rents, thus, [he] could not form the necessary intent to steal those rents ... As a matter of law, under these facts, Lennar has failed to allege a cause of action for conversion.

*Id.* at 500–01 (internal citations omitted).

As in *Ginsberg,* here the Plaintiff had no right to possession or immediate possession at the time of the alleged conversion. Instead, the United States' interest was contingent on the happening of several future events. Likewise, as in *Ginsberg,* the alleged tortfeasor—Bailey—was rightfully in possession of the res at all relevant times. Accordingly, following the view taken by Florida's Third District Court of Appeal, the United States is in no position to maintain either its conversion or civil theft action.

### c. Conversion Based On Demand and Refusal

█ When a defendant rightfully acquires possession of a plaintiff's property, an action for conversion may arise out of the plaintiff's demand for its return and the defendant's refusal to surrender it. 18 Am.Jur.2d *Conversion* § 84 (2003) ("A demand and refusal may be necessary to constitute a conversion, and to enable the plaintiff to maintain an action ... [i]f possession was not acquired by a tortious taking"); 18 Am.Jur.2d *Conversion* § 47 (2003) ("Demand and refusal ... gives rise to a cause of action for conversion where the defendant rightfully obtained possession, but wrongfully retained it"); *Marine*

*Transp. Servs. Sea–Barge Group, Inc. v. Python High Performance Marine Corp.*, 16 F.3d 1133, 1140 (11th Cir.1994) ("In Florida, the tort of conversion is an unauthorized act which deprives another of his property permanently for an indefinite time ... The essence of the tort is not the acquisition of the property; rather it is the wrongful deprivation") (internal citations and quotations omitted); *Nat'l Union Fire Ins. Co. v. Carib Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir.1985) (accord); *Seibel v. Society Lease, Inc.*, 969 F.Supp. 713, 718 (M.D.Fla.1997) (accord); *Florida Dept. of Ins. v. Debenture Guar.*, 921 F.Supp. 750, 757 (M.D.Fla.1996) ("The essence of conversion is not the acquisition of the property; rather, it is the wrongful deprivation") (internal citations omitted); *Chidlow v. Velarde,* 1996 WL 420866, *3 (M.D.Fla. 1996) 1996 U.S. Dist. Lexis 10488, *11(accord); *Small Bus. Admin. v. Echevarria,* 864 F.Supp. 1254, 1262 (S.D.Fla.1994) (" Acquisition of the property is unimportant. The essence of the tort of conversion is a party's refusal to surrender the property after demand has been made") (internal citations omitted); *Coastal Petroleum Co. v. Int'l Minerals & Chemical Corp.*, 709 F.Supp. 1092, 1093 (N.D.Fla. 1988) (accord); *Guardian Equip. Corp. v. Monz (In re Guardian Equip. Corp.),* 20 B.R. 821, 822 (Bankr.S.D.Fla.1982) (accord); *Star Fruit Co. v. Eagle Lake Growers,* 160 Fla. 130, 33 So.2d 858 (1948) ("Essential elements of a conversion is a wrongful deprivation of property to the owner ... The gist of a conversion has been declared to be not the acquisition of the property of the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled") (internal citations and quotations omitted); *Venezolanos v. Collazo,* 559 So.2d 651, 652–53 (Fla. 3rd DCA 1990) (accord); *Rice v. Ins. & Bonds, Inc.*, 366 So.2d 85, 87 n. 2 (Fla. 3rd DCA), *cert. dismissed,* 372 So.2d 469 (Fla.1979) (accord); *Murrell v. Trio Towing Serv., Inc.*, 294 So.2d 331, 332 (Fla. 3rd DCA 1974) ("The essence of an action for conversion is not the acquisition of the property by the wrongdoer, but rather the refusal to surrender the possession of the subject personalty after demand for possession by one entitled thereto") (internal citation and quotations omitted).

A demand and refusal alone constitutes a conversion where no unauthorized act has occurred prior to the demand and refusal. In that case, the demand and refusal transforms the defendant's rightful possession into a wrongful detention. *See Harrell v. Allen,* 439 F.2d 1005, 1007 (5th Cir.1971) (internal citations and quotations omitted); 90 C.J.S. *Trover and Conversion* § 46 (2003). "If, before demand and refusal, an actual conversion has already occurred, however, the evidence of demand and refusal" is extraneous and "relates back to the time of the [unauthorized or wrongful act]." *Harrell,* 439 F.2d 1005 at 1007 (internal citations and quotations omitted); 90 C.J.S. *Trover and Conversion* § 46 (2003).

In the matter at hand, an actual conversion had not occurred prior to the United States' demand. Unlike the case where a bailor delivers money to a bailee, and the bailee subsequently converts it to his or her own use, Bailey's acts of obtaining and disbursing the subject funds were authorized at the time they were committed. By virtue of the McCorkles' consent, Bailey lawfully created the Legal Trust Fund and facilitated disbursements therefrom. Accordingly, the Court must consider whether the Government's demand and Bailey's refusal, without more, may form the basis for a valid conversion claim. *Landsman Packing Co., Inc. v. Cont'l Can Co., Inc.*, 864 F.2d 721, 733 (11th Cir.1989) ("Where the possessor of property rightfully obtains possession ... a cause of

action for conversion arises when the owner makes a demand for return of the property and the possessor refuses") (internal citations omitted); *Gary v. D. Agustini & Asociados, S.A.*, 865 F.Supp. 818, 826 (S.D.Fla.1994) ("Where a person having a right to possession of property makes demand for its return and the property is not relinquished, a conversion has occurred") (internal citation and quotations omitted); *Krohn v. Tracton (In re Tracton),* 74 B.R. 40, 42 (Bankr.S.D.Fla.1987) (accord); *Jackson v. Hertz Corp.*, 590 So.2d 929, 932 (Fla. 3rd DCA 1990) (accord); *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman), Ltd.*, 450 So.2d 1157, 1160–61 (Fla. 3rd DCA 1984) (accord).

While conversion arising from demand and refusal presents a facially colorable theory of recovery, it is unsuited to this case for two reasons. Foremost, at the time of the Government's demand, Bailey was unable to comply; he no longer had possession and/or control over the Legal Trust Fund. A demand is not "effective if the failure to comply is explained by want of possession." *Robinson v. Hartridge,* 13 Fla. 501, 515 (Fla.1869) (internal citations omitted); *Sanfisket, Inc. v. Atlantic Cold Storage Corp.*, 347 So.2d 647, 648 (Fla. 3rd DCA 1977) ("In order for [Plaintiff] to prove a conversion upon [Defendant's] failure to deliver ... upon demand, [Plaintiff] must show that [Defendant] had the [property] at the time of the demand and was able to comply therewith") (internal citations omitted); W. Page Keeton et. al., Prosser and Keeton on the Law of Torts § 15 at 99 (5th ed. 1984) ("The defendant does not become a converter when the goods are no longer in his possession or control, so that the defendant is unable to comply with the demand"); Harper & James, Torts § 2.27 at 2:91 (3rd ed. 1996) ("If defendant does not have possession of goods when the demand is made, failure to comply with it does not constitute a conversion"); Restatement (Second) of Torts § 237 cmt. f (1965) ("The refusal to surrender a chattel upon demand is not a conversion if the person upon whom the demand is made does not have possession of the chattel at the time of the demand").[40]

Moreover, Bailey's refusal was unaccompanied by any wrongful deprivation or unauthorized act detrimental to the Govern-

40. In making this determination, the undersigned judge recognizes that several courts applying Florida law have indicated that a defendant's want of possession at the time of an unmet demand is immaterial. *See Misabec Mercantile, Inc. De Panama v. Donaldson, Lufkin & Jenrette ACLI Futures, Inc.*, 853 F.2d 834, 838 (11th Cir.1988) ("A conversion occurs when a person who has a right to possession of property demands its return and the demand *is not or cannot* be met") (internal citations and quotations omitted) (emphasis added); *Lajos v. duPont Publ'g,* 888 F.Supp. 143, 146 (M.D.Fla.1995) (accord); *Pearson v. Ford Motor Co.*, 694 So.2d 61, 69 (Fla. 1st DCA 1997) (accord); *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So.2d 490, 500 (Fla. 3rd DCA 1994) (accord); *Day v. Amini,* 550 So.2d 169, 171 (Fla. 2nd DCA 1989) (accord); *Shelby Mut. Ins. Co. v. Crain Press, Inc.*, 481 So.2d 501, 503 (Fla. 2nd DCA 1985), *rev. denied,* 491 So.2d 278 (Fla.1986) (accord); *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd.*, 450 So.2d 1157, 1161 (Fla. 3rd DCA 1984) (accord).

Those cases are distinguishable, however, insofar as they contemplate a demand and refusal succeeding an unauthorized act or coinciding with a wrongful deprivation. For instance, where an individual entrusts property to a stockbroker, and the stockbroker subsequently converts the property to his or her own use, an unmet demand is actionable on account of the unauthorized act. Likewise, where an individual entrusts his vehicle to a mechanic for repair, and the mechanic refuses to return the vehicle upon payment, an unmet demand is actionable by virtue of the wrongful deprivation. Conversely, where, as here, an individual entitled to possession of property rightfully expends that property without depriving another of its interest (because the other party lacked an interest at the relevant time) there is no cause of action.

ment's possessory interest in the Legal Trust Fund. When Bailey created the Legal Trust Fund, for example, the Government lacked a possessory interest in it. Likewise, when Bailey disbursed the contents of the Legal Trust Fund, the Government lacked a possessory interest. It was only after the res was dissipated that the Government obtained a possessory interest, and by that time, Bailey was incapable of causing injury to the Government. Inasmuch as conversion is regarded as a possessory action,[41] the Government's claims here are thwarted by legal impossibility: Bailey was never in a position to harm the United States' possessory interest in the Legal Trust Fund.

In sum, Bailey is not liable to the Government for injury to its possessory interest in the Legal Trust Fund because Bailey's dominion or control over the Legal Trust Fund was never in contravention to the Government's possessory interest therein; his acts of obtaining and disbursing the subject funds were authorized. Further, Bailey is not liable to the Government for refusing to return the Legal Trust Fund because he never possessed the Legal Trust Fund when the Government had an interest in it. In other words, he never had possession of the Government's property. How can one be expected to return property (the Government's interest in the Legal Trust Fund) when he never had possession of it?[42]

In reaching this conclusion, the Court notes that Congress could amend the forfeiture laws to remedy the predicament plaguing the Government here. In their current form, however, the forfeiture laws are patently insufficient to accomplish what the Government seeks to do in this case. As Judge Fawsett recognized, this Court does not have the power to order Bailey to "forfeit property other than the property which is expressly subject to forfeiture under sections 853(a), (c), and (p)." Complaint (Doc. No. 1), Ex. 2 at 31–32.

To conclude otherwise, would require this Court to extend the common law in an entirely new direction in contravention of Florida law. That action would be tantamount to "creating law" when Congress has failed to legislate. This Court will not intrude into the province of Congress by ignoring the well-established judicial limitations in our three-branch government. In the words of Justice Frankfurter:

> A judge must not rewrite a statute, neither to enlarge nor to contract it. Whatever temptations the statesmanship of policy-making might wisely suggest, construction must eschew interpolation and evisceration. He must not read in by way of creation. He must

41. *See Special Purpose Accounts Receivable Coop. Corp. v. Prime One Cap. Co.,* 125 F.Supp.2d 1093, 1101–02 (S.D.Fla.2000) (recognizing that an action for conversion is regarded as a possessory action under Florida law); *Nat'l Ventures, Inc. v. Water Glades 300 Condo. Assoc.,* 847 So.2d 1070, 1073 (Fla. 4th DCA 2003) (same); *Page v. Matthews,* 386 So.2d 815, 816 (Fla. 5th DCA 1980) ("In Florida, an action for conversion is regarded as a possessory action") (internal citation omitted); *Allen v. Universal C.I.T. Credit Corp.,* 133 So.2d 442, 445 (Fla. 1st DCA 1961) ("In this state an action for conversion is regarded as a possessory action") (internal citations omitted).

42. This issue is one which is best decided by the Florida Supreme Court. If federal district courts in the State of Florida had the ability to certify questions of law to the Florida Supreme Court, the undersigned judge would have inquired whether the relation back doctrine could satisfy the element of possession in a Florida conversion action. Inasmuch as this vehicle is unavailable, however, the Court must rely on persuasive indicia as to how the Florida Supreme Court would decide the issue; case law indicates that possession via a legal fiction is insufficient.

read out except to avoid patent nonsense or internal contradiction.

Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L.Rev. 527, 533, 535 (1947).

## VI. PUNITIVE DAMAGES

### A. GENERALLY

In the alternative, Bailey argues that the jury's $3,000,000 punitive damage award should be set aside on the grounds that (1) the summary judgment should not have been granted or published to the jury, and (2) the punitive damage award is unwarranted, inappropriate, serves no legitimate interest of the United States, and is contrary to law.[43]

Although this Court's reversal of its grant of summary judgment necessarily vitiates the punitive damages award and renders this issue moot, in the interests of judicial economy, the Court will consider Bailey's alternative argument.

### B. THE STANDARD OF REVIEW

"In our judicial system compensatory and punitive damages, although usually awarded at the same time by the same decisionmaker, serve different purposes." *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 1519, 155 L.Ed.2d 585 (2003) (internal citation omitted). Whereas "[c]ompensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct ... punitive damages serve a broader function; they are aimed at deterrence and retribution." *Id.* (internal citations and quotations omitted). For this reason, there are procedural and substantive constitutional limitations on the imposition of punitive damages; namely, the "Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *Id.* at 1519–1520 (internal citations omitted). "To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property." *Id.* at 1520 (internal citations omitted).

In examining punitive damage awards to ensure that they are based upon an application of law rather than a decisionmaker's caprice, the United States Supreme Court instructs reviewing courts to consider three guideposts: (1) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages awarded; and (3) the degree of reprehensibility of the defendant's misconduct. *See id.*

"It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve the punishment or deterrence." *Id.* at 1521 (internal citation omitted).

### C. LEGAL ANALYSIS

#### 1. The Difference Between the Punitive Damages Awarded by the Jury and the Civil Penalties Authorized or Imposed in Comparable Cases

In accordance with the Supreme Court's decision in *Campbell,* the first due process guidepost this Court will analyze is the disparity between the punitive damages awarded by the jury in this case and the civil penalties authorized or imposed in comparable cases.

43. *See generally* Motion Under Rule 29(b) to Set Aside Punitive Damage Jury Verdict as Unwarranted by the Evidence, and the Circumstances of the Case (Doc. No. 84).

In that regard, there are two relevant statutes. First, pursuant to Fla. Stat. § 775.083, defendants convicted of theft may be sentenced to pay a fine of $10,000.[44] "The existence of a criminal penalty does have bearing on the seriousness with which a State views the wrongful action." *Campbell,* 538 U.S. at ——, 123 S.Ct. at 1526. Second, pursuant to Fla. Stat. § 772.11(1), defendants found civilly liable for theft are subject to an award of threefold the actual damages sustained by the victim.[45]

Given the fact that the Government's actual damages ($2,000,000) were trebled ($6,000,000) pursuant to Fla. Stat. § 772.11(1), it is axiomatic that this prong of the Supreme Court's due process test weighs in favor of upholding the jury's $3,000,000 punitive damage award.

**2. The Disparity Between the Actual or Potential Harm Suffered by the Plaintiff and the Punitive Damages Awarded**

The second guidepost is the disparity between the actual or potential harm suffered by the plaintiff in comparison to the amount of the punitive damage award. While the Supreme Court has consistently rejected a mathematical formula in that regard, it has recognized that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Campbell,* 538 U.S. at ——, 123 S.Ct. at 1524 (internal citation omitted).

In the case at bar, the court awarded $2,000,000 in compensatory damages, and the jury levied punitive damages in the sum of $3,000,000. That represents a multiplier of 1.5, which is not per se unconstitutional.[46]

**3. The Degree of Reprehensibility of the Defendant's Misconduct**

The third and final due process guidepost is the degree of reprehensibility of the defendant's misconduct.

In *Campbell,* the Supreme Court stated that "[t]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of

44. Florida Statute § 812.014, the criminal section setting forth the elements of theft, provides, in pertinent part:

> (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or use, the property of another with intent to, either temporarily or permanently:
> (a) Deprive the other person of a right to the property or a benefit from the property.
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property ...
>
> If the property stolen is valued at $100,000 or more ... the offender commits grand theft in the first degree, punishable as a felony of the first degree, as provided in ... 775.083...

Florida Statute § 775.083 provides, in pertinent part, that "[f]ines for designated crimes and for noncriminal violations" shall not exceed "$10,000 when the conviction is of a felony of the first or second degree."

45. Florida Statute § 772.11(1), the civil section granting private parties a cause of action against defendants for violations of the criminal law proscribing theft, provides, in pertinent part:

> Any person who proves by clear and convincing evidence that he or she has been injured ... by reason of any violation of [§ 812.014] has a cause of action for threefold the actual damages ... and ... is entitled to ... reasonable attorney's fees and court costs in the trial and appellate courts.

Fla. Stat. § 772.11(1).

46. Incidentally, even if this Court awarded the Government only $777,545.71 on its claim, the amount Bailey received personally from the Legal Trust Fund, the $3,000,000 punitive damage award would not be unconstitutional in and of itself. That represents a multiplier of only 3.85.

the defendant's conduct." 538 U.S. at ——, 123 S.Ct. at 1521 (internal citation omitted). In that connection, courts should consider whether: "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health and safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, deceit, or mere accident." *Id.* (internal citations omitted). "The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damage award; and the absence of all of them renders any award suspect." *Id.*

Applying the aforementioned principles to the case at hand, this Court finds that the $3,000,000 punitive damage award entered against Bailey should be set aside in its entirety.

It is undisputed that the harm caused by Bailey's alleged conversion and/or civil theft was economic, not physical; that Bailey's actions exhibited no indifference or reckless disregard for the health and safety of others; and that the target of Bailey's conduct—the Federal Government—was not financially vulnerable.

Moreover, although the conduct in question technically involved repeated actions—insofar as Bailey facilitated a series of conversions[47]—the Government's case unquestionably stems from one isolated incident: Bailey's creation of a Legal Trust Fund for the payment of attorney's fees with funds that he knew were subject to forfeiture.

Finally, assuming for present purposes that Bailey acted with deceit in converting the Government's funds, other evidence suggests that further sanctions are unnecessary to achieve the desired punishment or deterrent effect.

There is no evidence that the U.S. Attorney for the Middle District of Florida has ever sued any attorney other than Bailey for the return of attorneys' fees. That Bailey has been "singled out" is particularly apparent inasmuch as while other attorneys on the McCorkle defense team received $1,222,454.29 of the $2,000,000 Legal Trust Fund, the Government has brought suit only against Bailey.

This Court is also troubled by the fact that the Government's conversion action is predicated on the relation back doctrine codified in 21 U.S.C. § 853(c). The undersigned is reluctant to affirm a discretionary punitive damages award based, in part, upon a legal fiction.

Finally, if the civil remedy of conversion is available to the Government, Bailey will be liable for the entire $2,000,000 even though he (or his designee) received only $777,545.71 from the Legal Trust Fund. Bailey's conduct does not warrant the imposition of further sanctions to achieve punishment or deterrence. Accordingly, the $3,000,000 punitive damage verdict shall be set aside in its entirety.

## VII. CONCLUSION

Based on the foregoing, it is **ORDERED** that:

1. The Defendant's, F. Lee Bailey, April 29, 2003 Motion for Reconsideration of the Court's Grant of Summary Judgment in Favor of the Government in its Order of January 24, 2003 (Doc. No. 82) is **GRANTED.**

47. The Court assumes the fact of conversion solely for the purpose of addressing Bailey's attack on the punitive damages award. As discussed *supra,* this Court has determined that Bailey's conduct did not amount to conversion.

(a) The Court's January 24, 2003 Order (Doc. No. 45) granting the Government summary judgment on its conversion and civil theft claims shall be **VACATED**.

(b) The Court determines that the Defendant, F. Lee Bailey, is entitled to judgment as a matter of law on the Government's claims of conversion and civil theft.

2. The Defendant's, F. Lee Bailey, April 29, 2003 Motion Under Rule 29(b) to Set Aside Punitive Damage Jury Verdict as Unwarranted by the Evidence, and the Circumstances of the Case (Doc. No. 84) is **GRANTED**. The $3,000,000 punitive damage award rendered against F. Lee Bailey on March 27, 2003 (Doc. No. 71) is **SET ASIDE**.

3. The clerk shall enter final judgment providing that the Plaintiff, the United States of America, shall take nothing on its claims against the Defendant, F. Lee Bailey. The judgment shall further provide that the Defendant shall recover his costs arising from this action.

4. The clerk is directed to close the case.

5. All other pending motions are denied as moot.